**UNITED STATES of America**

v.

**5 GAMBLING DEVICES.**

**UNITED STATES of America**

v.

**7 GAMBLING DEVICES.**

**UNITED STATES of America**

v.

**3 GAMBLING DEVICES.**

**UNITED STATES of America**

v.

**2 GAMBLING DEVICES.**

**Civ. A. Nos. 16561–16564.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Aug. 10, 1972.

See Local No. 104, Sh.Met.Wkrs.Int. Ass'n v. EEOC, 439 F.2d 237, 239 (9th Cir. 1971).

Donald E. Walter, U. S. Atty., Shreveport, La., Michael Carnes, New Orleans Strike Force Dept. of Justice, New Orleans, La., L. Edwin Greer, Asst. U. S. Atty., Shreveport, La., for plaintiff.

J. W. Seibert, III, Jonesville, La., William E. Skye, Alexandria, La., for defendants.

NAUMAN S. SCOTT, Judge:

The objects of these forfeiture proceedings were seized by federal agents on September 24, 1970. Subsequently, on March 9, 1971, the United States filed these complaints, alleging violation of 15 U.S.C. § 1173(a) (3). Forfeiture is sought under 15 U.S.C. § 1177.

15 U.S.C. § 1173(a) (3) provides:

"It shall be unlawful for any person during any calendar year to engage in the business of repairing, reconditioning, buying, selling, leasing, using, or making available for use by others any gambling device, if in such business he buys or receives any such device knowing that it has been

transported in interstate or foreign commerce after the effective date of the Gambling Devices Act of 1962, unless, after November 30 of the preceding calendar year and before the date on which he buys or receives such device, such person has registered with the Attorney General under this subsection."

15 U.S.C. § 1177 provides, in part:

"Any gambling device transported, delivered, shipped, manufactured, reconditioned, repaired, sold, disposed of, received, possessed, or used in violation of the provisions of this chapter shall be seized and forfeited to the United States * * * * "

The owners of the devices in question, Barney Atkins, Jr. and Rogers P. LaPrairie, seek to recover them.

Stipulations establish the following facts: That both owners were, in 1970, engaged in the business of repairing, reconditioning, buying, selling, leasing, using and making available for use by others the machines in question; that neither individual registered with the Attorney General as required by the statute; that both individuals had knowledge of the fact that each of these machines had traveled in interstate commerce; and, that they are, in fact, the owners of the respective machines. The testimony adduced on the trial of this matter established that the machines did travel in interstate commerce and that the machines were actually utilized for gambling purposes. There was also voluminous testimony by Special Agent William Harward concerning the operation, design and use of the machines. This testimony established clearly that the machine which was stipulated to be representative of the class of machine in question is a device designed to be used almost exclusively as a gambling device.

It is not necessary to enter a detailed description of the machines in this opinion. An excellent description of this type of machine is contained in the opinion rendered in Civil Actions No. 16,941, 16,959, 16,960, 16,961, 16,962 and 16,963 in the Lake Charles Division of the United States District Court for the Western District of Louisiana, on March 8, 1972. Another excellent description is available in Civil Actions No. EC7147S, EC7153S, EC7155S and EC7157S on the Docket of the United States District Court for the Northern District of Mississippi, Eastern Division, in the Findings of Fact and Conclusions of Law found in those cases. These are the standard gambling type pinball machines manufactured by Bally Manufacturing Company, Chicago, Illinois, featuring such devices as a "knock off meter" to erase games won when the player is paid off and certain circuitry which may be activated by insertion of additional money into the machine which may give certain game advantages to the player, i. e., increase the possibility of his winning. The Court finds that these machines are gambling devices within the meaning of the statute, 15 U.S.C. § 1171(a) (2).

The defendants urge the following matters by way of defense to this action:

A) Pinball machines are not contraband per se such as illegal whiskey or narcotics, untaxed whiskey, etc., therefore, the broad language of the forfeiture statute does not accord the claimants due process of law in accordance with the Fifth Amendment. Claimants cite United States v. United States Coin & Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) in support of this argument. In effect, the argument is that the statute is unconstitutional.

B) The operations of the claimants were purely intrastate in character and were not subject to the operation of the forfeiture statutes in question.

In addition to the foregoing, claimant LaPrairie advances the following arguments:

C) The Government failed to bear its burden of proof to show that the machines were gambling devices and

that the claimant knew of their transportation in interstate commerce.

■ D) The registration requirement violates the claimant's privilege against self-incrimination. In support of this contention he cites, inter alia, Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). Even in making the latter argument, claimant admits that the possession of pinball machines was not illegal in Louisiana at the time of the seizures. It is clear that the Louisiana Gambling Device Confiscation Statute, at that time, excluded from its operation the type of machines involved in this action. La.R.S. 15:31 (1950). Further, the only manner in which state prosecution could have resulted would have been if proof was available that the owner or possessor was actually engaged in gambling activity. The self-incrimination argument is obviously invalid. The registration requirement did not compel the claimant to incriminate himself.

In United States v. United States Coin & Currency, *supra,* the government sought forfeiture, under 26 U.S.C. § 7302, of funds found on the person of an individual who failed to register as a gambler and to pay the related tax as required by 26 U.S.C. §§ 4411, 4412, and 4901. The holding in *Coin & Currency* was, generally, that the privilege against self-incrimination could properly be invoked in forfeiture proceedings under § 7302 and that the *Marchetti* and *Grosso* decisions, *supra,* could properly be applied retroactively to seizures of property which had occurred before the date of such decisions. In discussing the due process argument in *Coin & Currency,* the Court stated:

"But before the Government's attempt to distinguish the Boyd case [1] could even begin to convince, we would first have to be satisfied that a forfeiture statute, with such a broad sweep, did not raise serious constitutional questions under that portion of the Fifth Amendment which commands that no person shall be 'deprived of * * * property, without due process of law; nor shall private property be taken for public use, without just compensation' * * *

"And this Court in the past has recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. See, e. g., Goldsmith-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376, *supra.* Cf. United States v. One 1936 Model Ford V-8 Deluxe Coach, 307 U.S. 219, 236–237, 59 S. Ct. 861, 869–870, 83 L.Ed. 1249, 1260, 1261 (1939).

*"We need not pursue that inquiry once again,* however, because we think that the Government's argument fails on another score. For the broad language of § 7302 cannot be understood without considering the terms of the other statutes which regulate forfeiture proceedings. * * * When the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise. It follows from *Boyd, Marchetti,* and *Grosso* that the Fifth Amendment's privilege may properly be invoked in these proceedings." (Emphasis added, footnote omitted)

The Fifth Circuit has interpreted *Coin & Currency* as applying the privilege against self-incrimination to forfeiture proceedings in the following cases: United States v. One 1961 Red Chevrolet Impala, 457 F.2d 1353 (5th Cir. 1972); United States v. One Olivetti-Underwood Electric Adding Machine, 443 F.2d 372 (5th Cir. 1971); United States v. $3,463.00 in United States Cur-

---

1. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) held that forfeiture proceedings instituted by reason of offenses committed by the owner of the property are criminal, in nature, though civil in form.

rency & Coin, 443 F.2d 378 (5th Cir. 1971); Urban v. United States, 445 F.2d 641 (5th Cir. 1971); and Harrington v. United States, 444 F.2d 1190 (5th Cir. 1971); inter alia. None of these cases interprets *Coin & Currency* as holding that the forfeiture statutes do not meet the standards of due process required by the Fifth Amendment. In United States v. One 1967 Ford Mustang, 457 F.2d 931 (9th Cir. 1972), the Court stated:

"* * * it has been consistently held that these 'in rem' proceedings do not constitute a taking of private property for public use under the Fifth Amendment, but rather that they constitute an exercise of the police power. See, e. g., Goldsmith-Grant Co. v. United States, 254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921). But cf. United States v. United States Coin & Currency, 401 U.S. 715, 719–721, 91 S.Ct. 1041, 1043–1044, 28 L. Ed.2d 434, 438–439 (1971) (dicta).[1]

The Court is in agreement with the opinion that *Coin & Currency*, although casting a shadow over the due process aspects of the forfeiture statutes, does not constitute sufficient authority for the proposition that those statutes do not meet the requirements of the Fifth Amendment in that respect. Thus, this argument of the claimants is rejected.

■ The argument of claimant Atkins that his activities are purely intrastate in character and beyond the scope of Congressional power is not valid. In United States v. Five Gambling Devices, 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179 (1953), the Supreme Court stated:

"No precedent of this Court sustains the power of Congress to enact legislation penalizing failure to report information concerning acts not shown to be in, or mingled with, or found to affect (interstate) commerce.

The course of decision relied on by the Government on analysis falls short of the holding asked of us here. Indeed, we find no instance where Congress has attempted under the commerce power to impose reporting duties under penal sanction which would raise the question posed by these proceedings. It is apparent that the Government's pleadings raise, and no doubt were intended to raise, a far-reaching question as to the extent of congressional power over matters internal to the individual states."

At the time of this decision 15 U.S.C. § 1173 read as follows:

"Upon first engaging in business, and thereafter on or before the first day of July of each year, every manufacturer of and dealer in gambling devices shall register with the Attorney General his name or trade name, the address of his principal place of business, and the addresses of his places of business in such district. On or before the last day of each month every manufacturer of and dealer in gambling devices shall file with the Attorney General an inventory and record of all sales and deliveries of gambling devices as of the close of the preceding calendar month of the place or places of business in the district. The monthly record of sales and deliveries of such gambling devices shall show the mark and number identifying each article together with the name and address of the buyer or consignee thereof and the name and address of the carrier. Duplicate bills or invoices, if complete in the foregoing respects, may be used in filing the record of sales and deliveries. For the purposes of this Act, every manufacturer or dealer shall mark and number each gambling device so that it is individually identifiable. In cases of sale, de-

---

1. The dicta in United States Coin & Currency may portend the demise of the doctrines upon which we must base our decision, but the Court's failure to override Goldsmith-Grant Co. and its progeny discourages our disregarding the authoritative effect of those cases. See United States v. United States Coin & Currency, 401 U.S. 715, 719–721, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971)."

livery, or shipment of gambling devices in unassembled form, the manufacturer or dealer shall separately mark and number the components of each gambling device with a common mark and number as if it were an assembled gambling device. It shall be unlawful for any manufacturer or dealer to sell, deliver, or ship any gambling device which is not marked and numbered for identification as herein provided; and it shall be unlawful for any manufacturer or dealer to manufacture, recondition, repair, sell, deliver, or ship any gambling device without having registered as required by this section, or without filing monthly the required inventories and records of sales and deliveries."

Nothing in the statute, as it read at that time, indicated that the regulatory scheme was predicated upon the power of Congress to regulate interstate commerce. In response to this case, Congress, in 1962, amended the statute to its present form, complete with the reference to interstate commerce. In the House Committee Report (H.R.Rep. No. 1828, 87th Cong., 2d Sess. 6 [1962] 1962 U.S.Code Cong. & Admin. News, pp. 3809, 3812) the following language is found:

"The committee bill also rewrites section 3 of the Johnson Act in order to solve certain questions raised by the Supreme Court of the United States in *United States v. Five Gambling Devices*, 346 U.S. 441, 74 S.Ct. 190, 98 L.Ed. 179 (1953). As rewritten, this section enables the Department of Justice more effectively to enforce the Act by allowing it to ascertain who is involved in trafficking in gambling devices."

Congress, in the 1962 amendments, added the reference to interstate commerce to 15 U.S.C. § 1173 in order to clarify the scheme of registration, in light of the *Five Gambling Devices* case, to reach those activities affecting interstate commerce. The power of Congress to regulate purely intrastate activities which might have an effect, no matter how trivial or insignificant, on interstate commerce has been consistently upheld. See, for example, Heart of Atlanta Motel, Inc. v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). The Court finds that the statute, in its present form constitutes a valid exercise of Congressional power and is sufficiently designed to meet its regulatory goal.

The Government introduced a substantial amount of documentary material, invoices and the like, to demonstrate a pattern of activity affecting interstate commerce. It is not necessary to consider this evidence in order to sustain the statute as being a legitimate regulation of interstate commerce.

■ Finally, the claimant LaPrairie contends that the Government failed to meet its burden of proving that the machines were gambling devices and that the claimant knew of their shipment in interstate commerce. The Court finds no merit in either contention. The only attempt on behalf of the claimants to show that the machines were not gambling devices was undertaken by counsel for claimant Atkins upon cross examination of Special Agent Harward. Counsel attempted to elicit testimony to show that an element of skill was present and that the game was not merely one of chance. Special Agent Harward testified that, due to the characteristics of the machine, any skill on the part of the player would play a negligible part in the final outcome. The testimony of Special Agent Harward concerning the characteristics of the machine proved conclusively that the game was a game of chance. Mr. E. O. Lalonde, custodian of the Alexandria American Legion Home, testified that winning players were paid off if so requested. It was stipulated that the other operators of establishments where claimant LaPrairie's machines were located would give substantially the same testimony. Counsel for claimant Atkins entered a written stipulation to the effect that payoffs were made to winning

players on his machines. [In fact, if there were ever a case of evidentiary "overkill" this would have to be it]. The proof was overwhelming and claimants offered no evidence of their own to refute this fact.

Claimant Atkins admits knowledge of the fact that the machines moved in interstate commerce. Claimant LaPrairie says the Government did not prove this element as to him, while stipulating that he knew that these machines were manufactured in Illinois, that he "never heard of this type of pinball machine being manufactured in Louisiana", and that a number of the machines were shipped to him directly from Chicago. Claimant LaPrairie offered no evidence that he did not have such knowledge to refute the only logical deduction that can be made from the stipulated facts.

The machines are ordered forfeited to the United States of America, costs are assessed against the claimants. Counsel for the Government should submit a judgment in accordance with this opinion for the consideration of the Court.