THIRD DIVISION
January 26, 2011

Nos.     1-09-3163
          1-10-0344

| | |
|---|---|
| W. ROCKWELL WIRTZ, an Individual and WIRTZ BEVERAGE ILLINOIS, LLC, an Illinois Limited Liability Company, on Behalf of and for the Benefit of the Taxpayers of the State of Illinois, | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | |
| v. | |
| PATRICK QUINN, in His Official Capacity as Governor of the State of Illinois; DANIEL W. HYNES, in His Official Capacity as Comptroller of the State of Illinois; ALEXI GIANNOULIAS, in His Official Capacity as Treasurer of the State of Illinois; THE DEPARTMENT OF REVENUE; BRIAN HAMER, Director of Revenue; THE ILLINOIS GAMING BOARD; AARON JAFFE, CHARLES GARDNER, EUGENE WINKLER, JOE MOORE, JR., and JAMES E. SULLIVAN, as Members of the Illinois Gaming Board; THE ILLINOIS LOTTERY; and JODIE WINNETT, Superintendent of the Lottery, | |
| | Honorable Lawrence O'Gara, |
| Defendants-Appellees. | Presiding Judge. |

PRESIDING JUSTICE QUINN delivered the judgment of the court, with opinion.

Justices Neville and Steele concurred in the judgment and opinion.

**OPINION**

Plaintiffs, W. Rockwell Wirtz and Wirtz Beverage Illinois, LLC, on behalf of all

taxpayers situated in the State of Illinois, brought this suit pursuant to section 11-303 of the

Nos. 1-09-3163, 1-10-0344

Illinois Code of Civil Procedure (Code) (735 ILCS 5/11-303 (West 2008)), seeking to enjoin the disbursement of public funds by the defendant public officials in connection with the "Capital Projects Acts," four pieces of legislation passed by the Illinois General Assembly and signed into law by Governor Patrick Quinn on July 13, 2009. Specifically, plaintiffs alleged that the Capital Projects Acts, three substantive bills and one appropriation bill (now Public Acts 96-34, 96-35, 96-37 and 96-38), violated provisions of the Illinois Constitution, including the single subject rule, the uniformity clause, the requirement that an appropriation bill be confined to the subject of appropriation, the requirement that public funds be used only for public purposes and the requirements of separation of powers and effective date of laws. The circuit court denied plaintiffs leave to file their complaint and plaintiffs' motion to reconsider. Plaintiffs now appeal. For the following reasons, we find that Public Act 96-34 was enacted in violation of the single subject requirement of our state constitution and, therefore, Public Act 96-34 is void in its entirety and because Public Acts 96-35, 96-37 and 96-38 are contingent on the enactment of Public Act 96-34, these public acts cannot stand.

## I. BACKGROUND

Plaintiffs' complaint challenged the constitutionality of Public Acts 96-34, 96-35, 96-37 and 96-38.

### A. Public Act 96-34

Public Act 96-34 is titled "AN ACT concerning revenue." Article 5 of Public Act 96-34 creates the Video Gaming Act, which allows licensed retail establishments where alcoholic liquor is served for consumption, licensed fraternal establishments, and licensed veterans establishments

-2-

and truck stops to conduct video gaming. Public Act 96-34 also amends the Riverboat Gambling Act to provide for administration and enforcement of video gaming by the Illinois Gaming Board. The bill also amends the Illinois Criminal Code to provide that gaming under the Video Gaming Act is not illegal gambling under Illinois law.

Public Act 96-34, article 800, creates the Capital Spending Accountability Law, which requires the Governor's Office of Management and Budget to make reports each quarter on the State's capital projects. Section 905 of Public Act 96-34 amends the State Finance Act to: (1) create the Capital Projects Fund and require transfers to the General Revenue Fund and that the Capital Projects Fund be used for capital projects and debt service; (2) create the Local Government Video Gaming Distributive Fund; and (3) stop all diversions from the Road Fund to the Secretary of State and State Police.

Public Act 96-34, section 910 and 925, also amends the Use Tax Act and Retailers' Occupation Tax Act to provide that candy, certain beverages, and grooming and hygiene products are taxed at the 6.25% rate (instead of the 1% rate) and to require deposit of the increased revenue into the Capital Projects Fund. Section 900 amends the Illinois Lottery Law to allow the Department of Revenue to conduct the Lottery through a management agreement with a private manager and to authorize a pilot program to allow the purchase of Illinois Lottery tickets on the Internet. Section 935 amends the University of Illinois Act to require the University to conduct a study on the effect on Illinois families of members of the family purchasing Illinois Lottery tickets and to report its findings.

Section 945 of Public Act 96-34 amends the Liquor Control Act of 1934 to increase the

tax on wine, beer, and alcohol and spirits. Section 955 amends the Illinois Vehicle Code to increase various fees and fines and to make changes concerning truck load and weight restrictions.

### B. The FY2010 Budget Implementation Act (Public Act 96-37)

Public Act 96-37 creates the FY2010 Budget Implementation (Capital) Act (the BIMP) and is titled "AN ACT concerning government." Contingent upon Public Act 96-34 becoming law, the BIMP amends the provisions in Public Act 96-34 including those pertaining to the private manager for the lottery and to the central communications system for the video gaming program. The BIMP adds a new section 85 to the Video Gaming Act, making its provisions severable pursuant to section 1.31 of the Statute on Statutes (5 ILCS 70/1.31 (West 2008)).

Also contingent upon Public Act 96-34 becoming law, the BIMP clarifies that, while the proceeds of the new liquor tax are to be deposited into the Capitol Projects Fund, the existing liquor tax amounts are to be deposited into the General Revenue Fund. The BIMP also makes the additional tax severable under section 1.31 of the Statute on Statutes.

The BIMP contains other provisions, including: a provision that amends the River Edge Redevelopment Zone Act to provide for the certification of a pilot river-edge redevelopment zone in Elgin in 2009; a provision amending the Vehicle Code to mandate a financial disclosure in rental car contracts for consumers; provisions creating an urban weatherization program; provisions adding Gaming Board peace officers; and provisions authorizing the Capital Development Board to provide grants to fund capital projects to improve or renovate a hospital's facility or to improve, replace, or acquire equipment or technology.

C. The Trailer Bill (Public Act 96-38)

Public Act 96-38 (the Trailer Bill) is titled "AN ACT concerning government," and is a trailer bill to Public Act 96-34. The Trailer Bill amends certain provisions of Public Act 96-34, if and only if Public Act 96-34 becomes law. Contingent upon Public Act 96-34 becoming law, the Trailer Bill changes the effective date for the increase in taxes on candy, certain beverages, and grooming and hygiene products to September 1, 2009 (rather than August 1, 2009). Contingent upon Public Act 96-34 becoming law, the Trailer Bill amends the Video Gaming Act by: (1) making changes concerning the residency requirements for licensing; (2) clarifying that the 50% split of the after-tax profits from a video gaming terminal is mandatory "notwithstanding any agreement to the contrary" between the licensed establishment and the video gambling operator; and (3) adding a severability clause.

D. The Appropriation Bill (Public Act 96-35)

Public Act 96-35 (the Appropriation Bill) is titled "AN ACT making appropriations." The Appropriation Bill provides appropriations for public funds for projects provided by Public Act 96-34 and the BIMP. The Appropriation Bill contains an article making its effectiveness contingent upon Public Act 96-34 becoming law, providing that it "does not take effect at all unless [Public Act 96-34], as amended, becomes law."

The Appropriation Bill includes a provision that "[n]o contract shall be entered into or obligation incurred for any expenditures for appropriation in Sections 5 and 10 of this Article until after the purposes and amounts have been approved in writing by the Governor." The Appropriation Bill also creates a grant program for the Environmental Protection Agency for

wastewater compliance, but only where "[t]hese grants are limited to projects for which the local government provides at least 30% of the project cost. There is an approved compliance plan, and there is an enforceable compliance schedule prior to grant award."

### E. Trial Court Proceedings

On October 20, 2009, the circuit court entered an order denying plaintiffs leave to file their complaint challenging the constitutionality of Public Acts 96-34, 96-35, 96-37 and 96-38. In doing so, the circuit court stated as follows:

> "This matter is an action that restrained and enjoined the disbursement of public funds by any officer or officers of the state government and that may be maintained under our laws by the Attorney General or any citizen and taxpayer of the state.
>
> In this case, this is a hearing pursuant to that statute regarding the bringing of the action by a citizen taxpayer. And the determination for this court to make is *** whether or not there's reasonable ground for the filing of such an action by, in this case, a citizen taxpayer.
>
> * * *
>
> And in making the court's decision, in addition to reviewing the written submissions and listening to the arguments of counsel, I have to remain constantly aware that the judiciary close [*sic*] the legislative process and the legislation with a strong constitutional presumption, and, further, that the language they used in the submissions before the court clearly is not the language of common everyday

conversation, which is clearly evidenced by the discussion of the single subject rule that perhaps only lawyers or legislative analysts would conceive or define in the way that our courts have defined in a very, very broad, liberal sense, quite differently than most people on the street would define 'single subject.'

But the court has gone through all of the counts of the complaint, reviewed all the authorities and citations as to argument by counsel, and based on all of the authorities that have been submitted, the issue is whether or not a reasonable ground [for] filing a complaint is found, and this court respectfully finds in the negative, and, therefore, the petition to file is respectfully denied."

On November 18, 2009, plaintiffs filed a notice of appeal from the circuit court's order denying leave to file their complaint (No. 1-09-3163). On January 29, 2010, the circuit court denied plaintiffs' motion for reconsideration and plaintiffs filed a second notice of appeal (No. 1-10-0344). On February 18, 2010, this court consolidated the two appeals.

On appeal, plaintiffs contend that the circuit court failed to apply the proper standard under section 11-303 of the Code (735 ILCS 5/11-303 (West 2008)), and the circuit court should have allowed plaintiffs leave to file their complaint which stated constitutional claims, including violations of the single subject rule, the uniformity clause, the requirement that an appropriation bill be confined to the subject of appropriation, the requirement that public funds be used only for public purposes and the requirements of separation of powers and effective date of laws.

## II. ANALYSIS

### A. Standard of Review

Plaintiffs' petition for leave to file their complaint was brought under section 11-303 of the Code (735 ILCS 5/11-303 (West 2008)). Section 11-303 provides: "Such action, when prosecuted by a citizen and taxpayer of the State, shall be commenced by petition for leave to file an action to restrain and enjoin the defendant or defendants from disbursing the public funds of the State." Section 11-303 further provides that if the court is satisfied that there is "reasonable ground for the filing of such action, the court may grant the petition." 735 ILCS 5/11-303 (West 2008). Our supreme court has held that a proposed complaint presents "reasonable grounds" for filing suit when there is nothing to indicate that the purpose of the petition "is frivolous or malicious." *Strat-O-Seal Manufacturing Co. v. Scott*, 27 Ill. 2d 563, 566 (1963).

Whether a statute is unconstitutional is a question of law subject to *de novo* review. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 227 (2010); *People v. Olender*, 222 Ill. 2d 123, 131 (2005). We are mindful that legislative acts are afforded a considerable presumption of constitutionality. *Olender*, 222 Ill. 2d at 132.

### B. Single Subject Rule

We first consider plaintiffs' argument that the legislature violated the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)) when it enacted Public Acts 96-34, 96-35, 96-37, and 96-38.

The single subject rule of the Illinois Constitution provides, in relevant part: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be

confined to one subject." Ill. Const. 1970, art. IV, §8(d). The single subject rule regulates the process by which legislation is enacted. *People v. Cervantes*, 189 Ill. 2d 80, 83 (1999). Specifically, the single subject rule is designed to prevent the passage of legislation that, if standing alone, could not muster the necessary votes for enactment. *Olender*, 222 Ill. 2d at 132. The practice of bundling less popular legislation with more palatable bills so that the well received bills would carry the unpopular ones to passage is known as "logrolling." *Olender*, 222 Ill. 2d at 132.

In addition to preventing logrolling, the single subject rule also facilitates the enactment of bills through an orderly and informed legislative process. *Olender*, 222 Ill. 2d at 132. By limiting a bill to a single subject, legislators can better understand and more intelligently debate the issues presented by a bill. *Olender*, 222 Ill. 2d at 132 (citing *People v. Reedy*, 186 Ill. 2d 1, 14 (1999)). Further, " 'the single subject rule ensures that the legislature addresses the difficult decisions it faces directly and subject to public scrutiny, rather than passing unpopular measures on the backs of popular ones.' " *Olender*, 222 Ill. 2d at 132 (quoting *Johnson v. Edgar*, 176 Ill. 2d 499, 515 (1997)).

In determining whether a statute violates the single subject rule, the term "subject" generally is construed liberally in favor of the legislature. *Reedy*, 186 Ill. 2d at 8-9. While legislative acts are afforded a considerable presumption of constitutionality, that presumption is not without limits. *Reedy*, 186 Ill. 2d at 9. The subject of a bill may be as broad as the legislature chooses, as long as the bill's provisions have a natural and logical connection. *Reedy*, 186 Ill. 2d at 9. The legislature violates the single subject rule when "it includes within one bill unrelated

provisions that by no fair interpretation have any legitimate relation to one another." *Reedy*, 186 Ill. 2d at 9.

## C. Public Act 96-34

With these principles in mind, we examine the procedural history and the substance of Public Act 96-34 in order to determine if a single subject violation exists. See *Olender*, 222 Ill. 2d at 133; *Johnson*, 176 Ill. 2d at 516.

Public Act 96-34 began as House Bill 255, which was introduced on January 20, 2009. In its original form, House Bill 255 began as a five-page bill amending the Illinois estate and generation-skipping transfer tax. The original House Bill 255 was approved by the House on March 24, 2009. On May 20, 2009, the Senate adopted Senate Floor Amendment Nos. 1 and 3, which replaced everything after the enacting clause in the original House Bill 255 with 280 pages of the current provisions in Public Act 96-34. These provisions include the creation of the Video Gaming Act and the Capital Spending Accountability Law and amendments to the Illinois Lottery Act, the State Finance Act, the Use Tax Act, the Service Use Tax Act, the Service Occupation Tax Act, the Retailer's Occupation Tax Act, the Motor Fuel Tax Law, the University of Illinois Act, the Riverboat Gambling Act, the Liquor Control Act, the Environmental Protection Act, the Vehicle Code, and the Criminal Code. On May 21, 2009, the House concurred with Senate Floor Amendment Nos. 1 and 3. On July 31, 2009, Governor Quinn signed Public Act 96-34 into law.

In *Johnson*, the Illinois Supreme Court invalidated a statute that violated the single subject rule. *Johnson*, 176 Ill. 2d at 516-17. At issue in Johnson was the constitutionality of Public Act 89-428, which began as an eight-page bill addressing the narrow subject of reimbursement by

prisoners to the Department of Corrections for the expense of incarceration. *Johnson*, 176 Ill. 2d at 517. The supreme court noted that Public Act 89-428 became a 200-page bill which created a law providing for the community notification of child sex offenders, created a law imposing fees on the sale of fuel, and enhanced the felony classifications for the possession and delivery of cannabis. *Johnson*, 176 Ill. 2d at 516. The bill also created an exemption from prosecution for eavesdropping applicable to employers who wish to monitor their employees' conversations, amended the law to allow the prosecution of juveniles as adults in certain cases, and created the new crime of predatory criminal sexual assault of a child. *Johnson*, 176 Ill. 2d at 516. The bill further changed the law governing the timing of parole hearings for prison inmates, changed the law governing when a defendant who is receiving psychotropic drugs is entitled to a fitness hearing, and added a provision to the law governing child hearsay statements. Finally, Public Act 89-428 amended a multitude of provisions in over 20 different acts and created several new laws. *Johnson*, 176 Ill. 2d at 516-17.

In determining whether the enactment of Public Act 89-428 violated the single subject rule, our supreme court explained, "While the length of a bill is not determinative of its compliance with the single subject rule, the variety of its contents certainly is." *Johnson*, 176 Ill. 2d at 516. Our supreme court noted that Public Act 89-428 encompassed subjects as diverse as child sex offenders, employer eavesdropping, and environmental impact fees imposed on the sale of fuel. The court concluded that "[b]y no fair intendment may the many discordant provisions in Public Act 89-428 be considered to possess a natural and logical connection." Johnson, 176 Ill. 2d at 516-17. Accordingly, our supreme court held that Public Act 89-428 was enacted in

violation of the single subject rule of our state constitution. *Johnson*, 176 Ill. 2d at 517-18.

The Act at issue in the present case presents a similar example of the legislature violating the single subject rule. As noted above, Public Act 96-34 began as a five-page bill addressing the narrow subject of amending the Illinois estate and generation-skipping transfer tax. As enacted on July 13, 2009, Public Act 96-34 grew to 280 pages covering a variety of subjects. The original bill addressing the Illinois estate and generation-skipping transfer tax became a bill that created the Video Gaming Act, legalizing video gaming in licensed establishments, and the Capital Spending Accountability Law, requiring the Governor's Office of Management and Budget to make reports each quarter on the state's capital projects. The bill amended the Riverboat Gambling Act to provide for administration and enforcement of video gaming by the Illinois Gaming Board and amended the Criminal Code to provide that gaming under the Video Gaming Act is not illegal gambling under Illinois law. The bill also amended the State Finance Act to: (1) create the Capital Projects Fund and require transfers to the General Revenue Fund and that the Capital Projects Fund be used for capital projects and debt service; (2) create the Local Government Video Gaming Distributive Fund; and (3) stop all diversions from the Road Fund to the Secretary of State and State Police. The bill further amended the Use Tax Act and Retailers' Occupation Tax Act to provide that candy, certain beverages, and grooming and hygiene products are taxed at the 6.25% rate (instead of the 1% rate) and to require deposit of the increased revenue into the Capital Projects Fund. The bill amended the Illinois Lottery Law to allow the Department of Revenue to conduct the Lottery through a management agreement with a private manager and to authorize a pilot program to allow the purchase of Illinois Lottery tickets on the

Internet. The bill amended the University of Illinois Act to require the University to conduct a study on the effect on Illinois families of members of the family purchasing Illinois Lottery tickets and to report its findings. Finally, Public Act 96-34 amended the Liquor Control Act of 1934 to increase the tax on wine, beer, and alcohol and spirits, and the Illinois Vehicle Code to increase various fees and fines and to make changes concerning truck load and weight restrictions.

We find that the wide range of topics in Public Act 96-34 cannot be considered to possess a "natural and logical connection." *Johnson*, 176 Ill. 2d at 517. While defendants assert that the varied provisions in Public Act 96-34 fit within the broad category of "revenue," defendants' argument is unconvincing. In *Johnson*, our supreme court rejected the argument that the discordant provisions of Public Act 89-428, entitled "An Act in relation to public safety," were related "because of a tortured connection to a vague notion of public safety." *Johnson*, 176 Ill. 2d at 517-18. Our supreme court cautioned in *Johnson*, the permitted use of such a sweeping and vague category to unite unrelated measures would "essentially elimina[te] the single subject rule as a meaningful check on the legislature's actions." *Johnson*, 176 Ill. 2d at 517-18.

Likewise, our supreme court in *Reedy*, 186 Ill. 2d at 12, found a single subject violation in the enactment of a public act entitled "An Act in relation to governmental matters, amending named Acts." The *Reedy* court held that the act encompassed at least two unrelated subjects: matters related to the criminal justice system and matters related to hospital liens. *Reedy*, 186 Ill. 2d at 12. The *Reedy* court concluded, "that these topics might fit within the broad subject of 'governmental matters' is not compelling." *Reedy*, 186 Ill. 2d at 12.

Similarly, in *Olender*, our supreme court found a single subject violation in the enactment

of a public act that the State argued involved the legitimate single subject of "revenue." *Olender*, 222 Ill. 2d at 140-41. The public act at issue in *Olender* amended the Illinois Income Tax Act to significantly increase the penalty, from misdemeanor to felony, for the first-time offense of willful and fraudulent acts, but included unrelated provisions such as matters creating a council to study issues relating to geographic information management technology and creating an authority which could issue bonds to support and develop university-related research parks. *Olender*, 222 Ill. 2d at 135-36.

The *Olender* court found that the State's characterization of "revenue" was as broad as the subjects of governmental regulation, "governmental matters," and "public safety" which were found to be too broad in *Reedy* and *Johnson* respectively. *Olender*, 222 Ill. 2d at 140. The *Olender* court explained that under the State's interpretation of revenue, "almost any statute would have a natural and logical connection to the subject of revenue to the state as long as the statute had any tangential impact on the state's economy." *Olender*, 222 Ill. 2d at 140-41. In contrast to the State's all-encompassing interpretation of revenue, the court noted, "Black's Law Dictionary defines 'revenue' as '[g]ross income or receipts' and defines 'general revenue' as '[t]he income stream from which a state or municipality pays its obligation unless a law calls for payment from a special fund.' " *Olender*, 222 Ill. 2d at 141 (quoting Black's Law Dictionary 1344 (8th ed. 2004)). The *Olender* court concluded that in light of the definition of revenue, many of the provisions in the public act at issue had no natural and logical connection to the single subject of revenue, including the creation of a council to study issues relating to geographic information management technology and creating an authority which could issue bonds to support and

develop university-related research parks. *Olender*, 222 Ill. 2d at 141. Accordingly, the court concluded that the public act violated the single subject rule. *Olender*, 222 Ill. 2d at 142.

In the present case, not all of the provisions of Public Act 96-34 have a natural and logical connection to the single subject of revenue to the state. For example, we discern no natural and logical connection between the subject of revenue and the amendment to the University of Illinois Act to require the university to conduct a study on the effect on Illinois families of members of the family purchasing Illinois Lottery tickets.

Also, there is no natural and logical connection between revenue and the provisions creating the Capital Spending Accountability Law. Under the Capital Spending Accountability Law, the Governor's Office of Management and Budget is required to make reports each quarter on the state's capital expenditures. This requirement involves expenditures, rather than reporting on revenue.

Further, Public Act 96-34 amends the Illinois Vehicle Code to make changes concerning truck load and weight restrictions. This amendment bears no natural and logical connection to revenue to the state.

Defendants, nonetheless, rely on *Geja's Café v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239 (1992) and *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341 (1999) (*Arangold I*), in support of their contention that our supreme court has upheld similar legislation as nonviolative of the single subject rule. However, we find defendants' reliance on these cases misplaced. In *Geja's Cafe*, our supreme court upheld an enactment that included, *inter alia*, provisions requiring Lake Shore Drive in Chicago to be rerouted around McCormick Place and

requiring excess revenues obtained by the Sports Facilities Authority to go to the Metropolitan Pier and Exposition Authority, because all matters included within the enactment had a natural and logical connection to the subject of expanding McCormick Place facilities. *Geja's Café*, 153 Ill. 2d at 256-58. Unlike *Geja's Café*, not all of the provisions in Public Act 96-34 bear a natural and logical connection to a single subject (*i.e.* revenue to the state). In *Arangold I*, our supreme court held that the legislation at issue (Public Act 89-21) embraced the single subject of implementation of the state budget for the 1996 fiscal year, which was adopted on the same day as the actual state budget (Public Act 89-22). *Arangold I*, 187 Ill. 2d at 346-47, 352. Here, Public Act 96-34 does not involve the single subject of implementation of the state budget. Our supreme court considered the holdings in *Arangold I* and *Geja's Café* in *Cervantes*, where the court held that Public Act 88-680 (the Safe Neighborhoods Act) was unconstitutional as being violative of the single subject rule. *Cervantes*, 189 Ill. 2d at 94, 98.

Accordingly, we conclude that Public Act 96-34 was enacted in violation of the single subject rule. During arguments before this court, defendants conceded that a single subject violation is a question of law and, therefore, this court need not remand the case upon finding such a violation. See *Lebron*, 237 Ill. 2d at 227 (whether a statute is unconstitutional is a question of law subject to *de novo* review).

Our supreme court has held that when an act is found to violate the single subject rule, the act must be struck in its entirety. *Johnson*, 176 Ill. 2d at 511-12; *Olender*, 222 Ill. 2d at 145-46. In *Johnson*, our supreme court explained:

"[T]he single subject rule prohibits the enactment of bills that encompass more

than one subject. Thus, a challenge that an act violates the single subject rule is, by definition, directed at the act *in its entirety.* There is no one provision or feature of the act that is challenged as unconstitutional, such that the defect could be remedied by a subsequent amendment which simply deleted or altered that provision or feature. In fact, a single subject challenge does not address the substantive constitutionality of the acts provisions at all. Rather, a single subject challenge goes to the very structure of the act, and the process by which it was enacted. If we determine that Public Act 89-428 in its structure is invalid, the Act may not be permitted to stand. The legislature is, of course, free to revisit the provisions contained in the Act in other legislation. Subsequent legislation, however, will not remedy the constitutional defect in Public Act 89-428 if it was passed in violation of the single subject rule." (Emphasis in original.) *Johnson*, 176 Ill. 2d at 511-12.

In Olender, our supreme court followed its holding in *Johnson* that severability principles do not apply to single subject violations. *Olender*, 222 Ill. 2d at 146. In *Olender*, the court explained, "Allowing for severability with regard to single subject violations would be contrary to the purposes behind the single subject rule." *Olender*, 222 Ill. 2d at 146.

We find that Public Act 96-34 violated the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8), and therefore hold that Public Act 96-34 is void in its entirety. Pursuant to their own terms, Public Acts 96-35 (the Appropriation Bill), 96-37 (BIMP) and 96-38 (the Trailer Bill) are all contingent on the enactment of Public Act 96-34. Since we find Public

Nos. 1-09-3163, 1-10-0344

Act 96-34 void in its entirety, the remaining acts cannot stand. Accordingly, we need not consider plaintiffs' constitutional challenges to the remaining public acts.

### III. CONCLUSION

For the above reasons, we find that Public Act 96-34 was enacted in violation of the single subject rule and is, therefore, void in its entirety. As a result, Public Acts 96-35, 96-37, and 96-38 cannot stand. The judgment of the circuit court is reversed.

Judgment reversed.