# Illinois Official Reports

## Appellate Court

---

### *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005

---

| | |
|---|---|
| Appellate Court Caption | TOMM'S REDEMPTION, INC., Plaintiff-Appellant, v. BRIAN HAMER, THE DEPARTMENT OF REVENUE, AARON JAFFE, LEE GOULD, MICHAEL HOLEWINSKI, MERIBETH VANDER WEELE, and THE ILLINOIS GAMING BOARD, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-13-1005 |
| Filed | March 10, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The constitutionality of section 35(a) of the Video Gaming Act, which prohibits the possession or operation of "any device that awards credits and contains a circuit, meter, or switch capable of removing and recording the removal of credits when the award of credits is dependent upon chance," was properly upheld, since plaintiff raised only a facial challenge and it had to prove that no situation existed in which section 35(a) would be valid, but section 35(a) is clear and it is intended to criminalize the possession of devices containing a knockoff switch and a retention meter used to transform ordinary games into gambling devices, and, therefore, the statute is not unconstitutionally vague, and further, plaintiff's due process claim was rejected on the ground that plaintiff failed to identify any protected property interest in the renewal of the decal showing that the tax on each individual machine had been paid. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-31569; the Hon. Thomas R. Allen, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | George E. Becker, of George E. Becker P.C., of Chicago, for appellant. |
|---|---|
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Timothy M. Maggio, Assistant Attorney General, of counsel), for appellees. |
| Panel | PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.<br>Justices Hoffman and Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff Tomm's Redemption, Inc., is in the business of providing coin-operated amusement devices to various establishments in the Chicago area. Section 35(a) of the Video Gaming Act (230 ILCS 40/35(a) (West 2010)), however, prohibits the possession or operation of "any device that awards credits and contains a circuit, meter, or switch capable of removing and recording the removal of credits when the award of credits is dependent upon chance."[1] Violation of the provision is a Class 4 felony. Claiming that the provision is unconstitutionally vague and a violation of due process, plaintiff filed this lawsuit. The circuit court dismissed the complaint, and we affirm.

¶ 2      Constitutional challenges to statutes can be made in one of two ways. First, a challenge can be "as applied," in which a plaintiff argues that the statute is unconstitutional under circumstances specific to that plaintiff. In that situation, "the facts surrounding the plaintiff's particular circumstances become relevant." (Internal quotation marks omitted.) *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 26. Alternatively, a plaintiff can raise a "facial" challenge, which is a significantly more difficult route. Unlike an as-applied challenge, "an enactment is invalid on its face only if no set of circumstances exists under which it would be valid." (Internal quotation marks omitted.) *Id.* ¶ 25. Importantly, the plaintiff's individual circumstances are irrelevant in the context of a facial challenge. See *id.* ¶ 27.

¶ 3      A review of plaintiff's complaint demonstrates that plaintiff has raised only a facial challenge to section 35(a). Although plaintiff mentions that it owns coin-operated amusement devices, there are no details about the devices and plaintiff does not seek a determination that the statute is unconstitutional under any particular circumstances. Instead, plaintiff challenges

---

[1]Section 35 has been amended several times in the past few years, but the provision at issue here has not changed. The section was also briefly declared to be unconstitutional for reasons not related to this case by *Wirtz v. Quinn*, 407 Ill. App. 3d 776 (2011), which was later overturned by the Illinois Supreme Court. See *Wirtz v. Quinn*, 2011 IL 111903. Neither of these issues affects the questions presented by this case.

the statute in general. This is an important point because it means that in order to succeed plaintiff bears the "burden of proving that no situation exists in which the ordinance would be valid." *Id.* ¶ 30 (citing *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20).

¶ 4 We review the constitutionality of a statute *de novo*. See *One 1998 GMC*, 2011 IL 110236, ¶ 20. In this case, plaintiff argues that section 35(a) is unconstitutional for two reasons.[2] First, plaintiff contends that the statute is unconstitutionally vague. "A law survives a vagueness challenge so long as it 'give[s] a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful' and 'convey[s] sufficiently clear standards so as to avoid its arbitrary enforcement.' " *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 15 (quoting *People v. Bailey*, 167 Ill. 2d 210, 228, 230 (1995)). "If the plain language of the statute sets forth clearly perceived boundaries, the vagueness challenge fails, and our inquiry ends." *Bartlow v. Costigan*, 2014 IL 115152, ¶ 42.

¶ 5 The meaning of the prohibition in section 35(a) is quite clear to any person of reasonable intelligence who is even passingly familiar with the gambling industry: the legislature is referring to devices that contain knockoff switches and retention meters. These two features have a long history in the illegal gambling world and are used to transform ordinary games into gambling devices. The scheme exploits a type of gaming reward called the free replay, which grants the player a free game credit when a certain score is exceeded or other event occurs. For example, this is how the system operates when installed on a pinball machine:

> "[U]nlike a slot machine, the pinball machine did not directly reimburse the player but did so indirectly through an intermediary, the proprietor, who, in place of the machine, paid the player based upon the number of credits received. Upon 'cashing-in,' the proprietor would use the knock-off switch to erase the number of accumulated free games credited. The pinball machine owner then would refund the proprietor based on the replay meter's reading of the number of knocked-off replays. The free replay feature could be manipulated in such a way as to record the number of replays given through a registration meter with a knock-off switch attached to erase the number of accumulated credits. While the amount wagered, as initially limited to one coin, may have seemed nominal, soon multiple coin slots were added to these machines to increase the stakes." Brian Lester, *The Free Replay Feature in Pinball Machines: A Fresh Look at the Elements of Gambling and A Revised Method of Analysis*, 41 Brandeis L.J. 297, 308 (2002).

Used in this way, knockoff switches and renewal meters serve as a type of illicit accounting system that transforms gaming devices that do not have a direct-payout system akin to slot machines into gambling devices. See Ronald J. Rychlak, *Video Gambling Devices*, 37 UCLA L. Rev. 555, 563-65 & n.48 (1990).

¶ 6 Knockoff switches and renewal meters are not new devices. They have been around since the 1930s and have been prohibited by federal law since at least 1951. See Lester, *supra*, at 308; Rychlak, *supra*, at 579; see also *United States v. 5 Gambling Devices*, 346 F. Supp. 999 (W.D. La. 1972) (forfeiture proceedings involving pinball machines that incorporated knockoff switches). They are also not limited to mechanical devices such as pinball machines,

---

[2]Plaintiff also contended before the circuit court that the statute was an unconstitutional violation of the single-subject rule, but it has abandoned that argument on appeal in light of the supreme court's ruling in *Wirtz*.

but can instead be incorporated into nearly any type of coin-operated gaming device. See Rychlak, *supra*, at 566 (discussing video gambling machines).

¶ 7 With this context in mind, it is clear that section 35(a) is intended to criminalize the possession of certain kinds of gaming devices that contain a knockoff switch and a retention meter. The legislature did not use those specific terms, but it did not need to. The plain language of the statute prohibits operation or possession of chance-based gaming devices that contain two very specific components. The statute is therefore not unconstitutionally vague.

¶ 8 It is worth noting that plaintiff's chief complaint is not actually about vagueness at all. In fact, plaintiff's briefs demonstrate that it knows exactly what the statute is referring to, which is unsurprising given that it is in the gaming business. *Cf. Bartlow*, 2014 IL 115152, ¶ 47 (observing a similar flaw in the plaintiff's arguments in that case). Instead, plaintiff contends that the statute is vague because "it requires an internal inspection to see into the machine to determine if it has a switch capable of removing all credits and recording removal of the same," and "requires a determination if a device is played for amusement purposes only." The problem is that these concerns have nothing to do with vagueness, particularly in the context of a facial challenge to the statute's constitutionality. The only question here is whether the statute is sufficiently definite in its terms that a person of ordinary intelligence can understand what is lawful and that it cannot be arbitrarily enforced. See *Nicholson v. Wilson*, 2013 IL App (3d) 110517, ¶ 15. Any burden imposed by complying with the statute is irrelevant to a vagueness analysis. *Cf. Bartlow*, 2014 IL 115152, ¶ 49 (noting, in the context of a vagueness challenge, that "[e]ven if [compliance] proves inconvenient for construction contractors, it does not render [the statute] unconstitutionally vague on its face").

¶ 9 Plaintiff's second argument is somewhat convoluted, but it is in essence that section 35(a) is a violation of procedural due process. Section 2 of the Coin-Operated Amusement Device and Redemption Machine Tax Act (35 ILCS 510/2 (West 2010)) imposes a yearly privilege tax on owners or lessors of certain gaming devices, payable to the Illinois Department of Revenue. Once the tax is paid, the Department issues a decal that must be displayed on the device. Plaintiff contends that the decals are actually individual licenses to operate the machines, which would mean that plaintiff has a property interest in the license that is subject to procedural due process protections before it can be taken away. According to plaintiff's complaint, section 35 violates procedural due process because it does not provide for a hearing before "any seizure, revocation of license or criminalization of said equipment." Plaintiff seems to be arguing that the statute unconstitutionally revoked valid licenses to operate coin-operated amusement devices that had been issued before the statute came into effect in July 2012.

¶ 10 The fundamental problem with plaintiff's argument is that in order for procedural due process protections to apply an identifiable property interest must first exist. See *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 434 (2000). While professional licenses and licenses to do business are protected property interests that are subject to due process considerations prior to revocation (see, *e.g.*, *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 19 (medical license); *Las Fuentes, Inc. v. City of Chicago*, 209 Ill. App. 3d 766, 770 (1991) (liquor license)), the tax decals issued by the Department are not licenses. Far from being a "license" to operate the machines as plaintiff claims, a review of the relevant statute and regulations demonstrates that the decals are simply evidence of payment of the annual privilege tax on coin-operated amusement devices. See 35 ILCS 510/2(a) (West 2010)

(annual registration form for coin-operated amusement devices "shall be accompanied by the required privilege tax for each device," and when paid the Department must issue "one privilege tax decal for each such device on which the tax has been paid, stating the year for which issued. Such privilege tax decal shall thereupon be securely affixed to such device"). While the Department did at one point issue licenses to operate coin-operated amusement devices, it ceased doing so in 2003, long before section 35(a) came into effect. See 86 Ill. Adm. Code 460.101 (2004) ("Beginning July 1, 2003, privilege tax decals will be issued instead of licenses.").

¶ 11    Moreover, even if the tax decals were actually licenses protected by procedural due process considerations, a license holder does not have a protected property interest in the license's renewal. See *Las Fuentes*, 209 Ill. App. 3d at 770 ("There is no vested interest, however, in the renewal of a liquor license, thus nonrenewal of a license, or the denial of a new license, is not subject to due process." (Emphasis omitted.)). The tax decals that plaintiff claims are protected are issued only for one year (see 86 Ill. Adm. Code 460.101(b) (2004) ("Privilege tax decals are issued in one-year increments only.")), and so any interest that plaintiff or anyone else may have had in decals issued prior to the statute's enactment has long since become moot. Either way, plaintiff has not identified a protected property interest. There is thus no basis for plaintiff's claim that the statute violates procedural due process.

¶ 12    The last issue that plaintiff raises is whether the circuit court should have allowed plaintiff to amend the complaint. Following the circuit court's dismissal of the complaint, plaintiff filed a motion to reconsider. In addition to arguing that the circuit court's decision to dismiss the complaint was erroneous, in its reply brief and during argument on the motion plaintiff also asked for leave to amend the complaint in order to raise an as-applied challenge to section 35(a), as well as to add new claims challenging the statute on vagueness and proportionate-penalties grounds. The circuit court denied plaintiff's request at the end of the hearing.

¶ 13    Whether to grant a plaintiff leave to amend a complaint is a decision that is left to the sound discretion of the circuit court, and under normal circumstances leave to amend should be liberally granted. See *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 113 (2011). Courts consider a number of factors in determining whether leave should be granted, such as "(1) whether the amendment cures a defect in the pleadings; (2) whether the other party is prejudiced or surprised by the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleadings." *Id.*

¶ 14    But these factors apply only to amendments that have been proposed prior to final judgment. After final judgment, a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a motion for leave to amend. See *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 332 (2008). The reason is that although section 2-616(a) of the Code of Civil Procedure (735 ILCS 5/2-616(a) (West 2010)) provides that "[a]t any time before final judgment amendments may be allowed on just and reasonable terms," there is no corresponding provision mandating similar latitude in amendments offered *after* final judgment has been entered. Following judgment, a complaint may only be amended in order to conform the pleadings to the proofs. See 735 ILCS 5/2-616(c) (West 2010). A complaint cannot be amended after final judgment in order to add new claims and theories or to correct other deficiencies. See *Compton*, 382 Ill. App. 3d at 332; see also *Mandel v. Hernandez*, 404 Ill. App. 3d 701, 707-10 (2010).

¶ 15    The threshold question in this type of situation is therefore whether the plaintiff asked for leave to amend the complaint before or after the circuit court entered final judgment. In this case, the circuit court dismissed the complaint with prejudice,[3] and plaintiff did not seek leave to amend until briefing on its motion to reconsider the judgment was well underway. The circuit court's dismissal order was therefore a final judgment and plaintiff's request for leave to amend came too late. Plaintiff had no statutory right to amend the complaint by that point, and so the circuit court's decision to deny leave to amend was not error. *Cf. Compton*, 382 Ill. App. 3d at 332.

¶ 16    Affirmed.

---

[3]It is clear from the record that the circuit court intended for the dismissal to be with prejudice, even though its order does not expressly say so. Moreover, plaintiff does not argue that the dismissal was intended to be without prejudice and should therefore not be considered final, so we need not consider the issue. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).