PHYLLIS JONES *et al.,* Plaintiffs-Appellants, v. UNIVERSAL CASUALTY COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—92—0821

Opinion filed February 4, 1994.

843

Torshen, Schoenfeld & Spreyer, Ltd., of Chicago (Jerome H. Torshen, Josette Belvedere, and Steven P. Garmisa, of counsel), for appellants.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, of counsel), for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This is an insurance coverage case. The plaintiffs appeal from an order dismissing their complaint against their insurer, Universal Casualty Company (Universal). The plaintiffs contend that the trial judge erred in concluding that the plaintiffs failed to comply with a notice provision of their policy with Universal following a hit-and-run accident. The principal arguments of the plaintiffs are that one notice provision of the Universal insurance policy violates the public

policy as expressed by the legislature in the Illinois Insurance Code (the Code) (Ill. Rev. Stat. 1989, ch. 73, par. 613 *et seq.*); and, alternatively, that a conflict exists between the notice provisions of the policy thus creating an ambiguity that must be resolved in the plaintiffs' favor.

The plaintiffs, Phyllis Jones, Deborah Jones, Paulette Jones and Akissi Jones, filed suit against Universal on behalf of themselves and others similarly situated seeking declaratory relief regarding coverage under their insurance policy with Universal. The suit of Akissi Jones, a minor, was settled. The trial judge granted Universal's section 2—615 motion (Ill. Rev. Stat. 1991, ch. 110, par. 2—615) and dismissed the complaint of the remaining three plaintiffs; he later denied leave to file an amended complaint.

■ The plaintiffs do not now argue the sufficiency of the first complaint; the issue before us, therefore, is whether the judge erred in denying the motion to file the amended complaint. A proposed amended complaint is insufficient, and thus not curative of an earlier complaint's defects, only if, taking as true all well-pleaded facts and the inferences to be drawn therefrom, it is apparent that no set of facts can be proved which will entitle a plaintiff to recover. (*Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc.* (1992), 229 Ill. App. 3d 119, 123, 593 N.E.2d 872.) With those principles as guidelines, we turn to the allegations of the amended complaint.

On July 14, 1990, each of the plaintiffs sustained bodily injury when the car in which they were riding was "struck by a hit-and-run vehicle." The identity of the driver and the owner of the hit-and-run vehicle could not be ascertained. The plaintiffs reported the incident to the State Police within 24 hours of the accident. In that report the plaintiffs said that their automobile was traveling on an interstate highway in Chicago when the car next to it "improperly changed lanes and struck" their car. The other car left the scene without exchanging information.

Phyllis Jones was hospitalized from July 14 until July 16, 1990, as a result of the collision. Phyllis Jones was the named insured on two automobile insurance policies. She held an insurance policy issued by Universal which covered bodily injury to her and the other car occupants. That policy requires sworn, written notice to Universal of any hit-and-run accident within 30 days of the accident. Phyllis Jones also held an insurance policy covering property damage to the car; that policy was issued by American Ambassador Insurance Company (American).

Phyllis Jones purchased both policies through Mr. Rubens (Rubens), who was an "employee or agent" of Yale Insurance Agency,

Inc. (Yale), which "is licensed as an insurance agency." Rubens is a "licensed insurance producer," and "acted as an insurance producer in selling an insurance policy to Phyllis Jones." Phyllis Jones learned about Yale through a television commercial and conducted business with Yale by telephone and mail. Rubens completed course work, took continuing education classes, and passed an examination to act as an insurance producer. Yale and Rubens "are deemed to know the reporting requirements for the insurance policies they sell."

Phyllis Jones called Rubens on July 16, 1990, as soon as she was released from the hospital, and asked him how she should report the accident. He told her to call American; neither Rubens nor Yale told her at any time "that she was obligated to file a sworn, written statement of her claim to Universal," that American "only provided property damage coverage," and that she "should also report the *** claim to her automobile liability insurer, Universal." When she filed a claim with American on July 16, 1990, American did not tell her she should have informed Universal. The plaintiffs did not submit sworn, written notice to Universal within 30 days of the accident.

The plaintiffs did not file a claim with Universal immediately because the conduct of Yale, Rubens, and American induced Phyllis Jones to reasonably believe that she had satisfied all the pertinent reporting and notice provisions and that no other steps were required to protect her rights.

More than 30 days after the accident, the plaintiffs retained attorney Josette Belvedere to represent them. Belvedere was informed by American that it only insured property damage; eventually, after persistent and repeated attempts, Belvedere was informed that Universal provided liability coverage.

After Belvedere learned of the Universal policy, each of the plaintiffs promptly submitted claims for uninsured motorist benefits under the Universal policy. On October 26, 1990, the plaintiffs notified Universal of the accident. On April 12, 1991, Universal denied coverage in a letter to Belvedere on the ground that the plaintiffs had not filed a statement under oath within 30 days of the accident as required by the policy.

The amended complaint alleged that uninsured motorist coverage for hit-and-run vehicles is mandated by the Illinois Insurance Code and that the policy's 30-day notice provision for hit-and-run accidents violates the Illinois public policy expressed in the Code.

The amended complaint also alleged the following:

(1) The car which struck the plaintiffs was statutorily presumed to be uninsured under the Code because the other car did not file a report of the accident with the Secretary of State within 120 days of the accident.

(2) Another provision of the policy requires that reasonable notice of an accident be given to the insurer as soon as practicable. The plaintiffs maintained, therefore, that the policy contained conflicting, misleading and inconsistent notice requirements.

(3) The plaintiffs did provide reasonable notice as soon as practicable.

(4) Universal waived any argument it did not receive notice as soon as practicable when it based the denial of coverage only on the 30-day notice provision.

(5) Universal was not harmed by the late notice because the police and American, who were notified soon after the accident, were unable to locate the driver of the car that collided with the car of the plaintiffs.

Count I of the amended complaint requested a declaratory judgment that the 30-day notice provision in the policy violated public policy and that Universal was required to pay uninsured motorist benefits to the plaintiffs. Count II of the amended complaint alleged that Universal engaged in unfair or deceptive acts or practices regarding the policy contrary to section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121$^1$/$_2$, par. 262). That count requested a declaratory judgment that Universal engaged in unfair and deceptive acts and practices by depriving the plaintiffs of uninsured motorist coverage. Count III was brought as a class action. The judge made no determination regarding class certification, and certification is not an issue in this appeal.

Universal had filed a section 2—615 motion to dismiss all counts of the first complaint and a section 2—619 motion with supporting affidavits to dismiss count II. The judge dismissed the entire complaint based on the section 2—615 motion. The judge expressly found that the 30-day notice provision was not "inappropriate or improper" and did "not violate the statutory scheme" of the Code. He also found that the policy was not ambiguous. He later denied leave to file the amended complaint for the same reasons that he had dismissed the original complaint.

Our analysis necessarily begins with the notice provisions of the policy. In Part II of the policy, which is captioned "Family Protection Coverage (Uninsured Motorist Coverage)," are certain definitions which include the following:

" '[H]it-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided (a) there

cannot be ascertained the identity of either the operator or the owner of such hit-and-run automobile, (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for damages against a person or persons whose identify [*sic*] is unascertainable and setting forth the facts in support thereof and (c) at the company's request the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident."

After Part VI, which is captioned "Uninsured Motorists Damage to Property," is that part of the policy which is captioned "Conditions." Under the caption, "Conditions," is the language, "Unless otherwise noted, conditions apply to all parts." Among the conditions is the following:

"In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and address of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable. A claim seeking recovery against the company under parts II and III [underinsured motorist's coverage] must be filed within two (2) years of the accident."

We will first consider the plaintiffs' argument that the policy definition of a hit-and-run vehicle and the notice provision of the conditions in the policy are in conflict, making the policy unclear regarding which notice period applies. They argue that the notice provision listed with all other policy conditions, and not a provision "hidden" in the definitions portion of part II, should govern.

■ Illinois courts have consistently recognized that "insurance policies are to be liberally construed in favor of coverage and where an ambiguity exists in the terms, the ambiguity will be resolved in favor of the insured and against the insurer." (*State Security Insurance Co. v. Burgos* (1991), 145 Ill. 2d 423, 438, 583 N.E.2d 547.) Thus, "[w]hen an insurance policy is ambiguous, the insured should be deemed covered." (*Shelton v. Country Mutual Insurance Co.* (1987), 161 Ill. App. 3d 652, 655, 515 N.E.2d 235.) An insurance policy provision is ambiguous if it is "subject to more than one reasonable interpretation" when reading the policy as a whole. (*State Farm Mutual Automobile Insurance Co. v. Pfannebecker* (1978), 64 Ill. App. 3d 582, 585, 381 N.E.2d 796.) The determination of ambiguity may be made

as a matter of law, but not "in a factual vacuum"; among other factors, "the court should consider the *** predominate purpose of the contract which is to indemnify the insured." *Illinois Central Gulf R.R. v. Continental Casualty Co.* (1985), 132 Ill. App. 3d 310, 313, 476 N.E.2d 1266.

In *Standard Mutual Insurance Co. v. General Casualty Cos.* (1988), 171 Ill. App. 3d 758, 525 N.E.2d 965, the appellate court discussed an insurance policy ambiguity caused by conflicting provisions in two parts of the insurance contract. The insured rented a car from a dealer which had a policy covering its rental cars. The insured paid an extra amount, above the rental fee, for liability coverage under this policy. The rental agreement provided that the "[r]enter agree[d] not to use or operate said vehicle *** [o]utside of the State [of Illinois]." (171 Ill. App. 3d at 760.) However, the agreement incorporated the policy the insured procured with the additional fee, and the policy provided coverage for accidents anywhere in the United States, its possessions, Puerto Rico or Canada. When the insured was in an accident in Canada, the insurer refused to pay because the insured left the State of Illinois.

The appellate court explained that the policy and agreement had to be read together and that when they were, there was an obvious conflict between these geographical limitations. The court said that "if an insurance contract contains inconsistent or conflicting clauses, the clause which affords greater or more inclusive benefit for the insured will govern." *Standard Mutual*, 171 Ill. App. 3d at 764.

Similarly, in *Aguilar v. Safeway Insurance Co.* (1987), 157 Ill. App. 3d 877, 510 N.E.2d 1135, the court found an ambiguity created by two separate provisions of an insurance contract. The *Aguilar* plaintiffs sued their insurer, requesting reimbursement of costs they incurred suing uninsured motorists who injured them. The plaintiffs' complaint alleged that their policies with the insurer required them to file these suits. The policies required that "[a] suit seeking recovery under Part II [uninsured motorist coverage] *** be filed within two years of the accident." (*Aguilar*, 157 Ill. App. 3d at 880.) The insurer argued that this provision referred only to suits against the insurer, and not to suits against tortfeasors, while the plaintiffs argued that it referred to suits against either the company or a tortfeasor.

The *Aguilar* court noted that this language was subject to both interpretations and found that this provision was ambiguous. The court referred to language in another policy provision which specifically referred to "Action[s] Against Company" where only suit against the company was intended. (*Aguilar*, 157 Ill. App. 3d at 881.) The court noted that if the insurer wanted the two-year filing

requirement to apply only to suits against itself, it could have similarly limited the conditions language at issue. Due to the ambiguity, the court construed the language against the insurer who drafted the policy. Therefore, the court held that the complaint stated a cause of action to recover the suit costs and reversed the section 2—615 dismissal.

■ Applying those cases to the policy provisions at issue here, we find that the "Conditions" notice provision conflicts with the definition of "hit-and-run automobile," creating an ambiguity that requires construction in favor of the plaintiffs. We may agree with Universal's contention that the 30-day notice provision itself is unambiguous, but Universal does not answer the plaintiffs' argument that there is, in fact, a conflict between the definition of hit-and-run automobile and the notice provision contained in the "Conditions." The notice provision expressly states that it applies to all the sections of the policy unless "otherwise noted." It would not have required any special gift of draftsmanship for Universal to provide that the notice provision did not apply to hit-and-run accidents. To illustrate, the notice provision in the conditions expressly provides that a "claim seeking recovery against the company under part II [which contains the definition of hit-and-run automobiles] and III must be filed within two (2) years of the accident." In short, Universal cannot avoid the fact that there is a conflict between the notice provisions of the policy. That being so, that conflict must be construed in favor of coverage and against Universal, the policy drafter. We, therefore, hold that the less restrictive notice requirement of the "Conditions" section should apply to the plaintiffs' claim and they should be covered under the policy if they gave reasonable notice as soon as practicable to Universal.

We must reject Universal's contention that the plaintiffs have waived this argument by not raising the argument in the trial court. The plaintiffs' complaint alleged that the notice provisions were ambiguous; the plaintiffs' memorandum expressly argued that the notice provisions were ambiguous; and the trial judge made a specific finding that there was no ambiguity in the notice provisions of the policy.

The plaintiffs also argue, supported by extensive case authority, that the notice requirement contained in the policy definition of a hit-and-run automobile violates the policy of the State as expressed by the Insurance Code. The plaintiffs' argument, summarized, is that the legislature requires that uninsured motorist and hit-and-run coverage must be submitted to the insured; the legislative intent was to insure that persons injured by uninsured motorists and by hit-and-

run vehicles are protected to the extent they would be if injured by an insured driver at least to the extent of the minimum limits of the Safety Responsibility Law; the legislative intent may not be circumvented by the insertion of a restricting provision in an insurance policy; and the policy's definition is such a restricting provision. Universal has responded with four separate arguments also supported by extensive case authority.

The precise issue before us has never been presented or decided in any Illinois case. In the two Illinois cases cited by Universal, the question of the validity of the definition of a hit-and-run vehicle as used in the Universal policy was not raised. (See *State Farm Mutual Automobile Insurance Co. v. Gray* (1991), 211 Ill. App. 3d 617, 570 N.E.2d 472; *Rooney v. State Farm Mutual Automobile Insurance Co.* (1983), 119 Ill. App. 3d 112, 456 N.E.2d 160.) In the case cited by the plaintiffs, *Country Mutual Insurance Co. v. Kuzmickas* (1971), 2 Ill. App. 3d 313, 276 N.E.2d 357, the court held that a father's negligence in not complying with the 30-day notice provision could not be imputed to his minor son. *Kuzmickas* involved "the law of this state which favors the protection of *** minors," and not the legality of the "hit-and-run" definition. (*Kuzmickas*, 2 Ill. App. 3d at 317.) In addition, the *Kuzmickas* insureds initially believed they could locate the negligent driver, making it unclear when the accident was obviously a "hit-and-run." We note that *Kuzmickas* was the basis of the settlement between Universal and the minor plaintiff, Akissi Jones.

Universal has cited several cases from other jurisdictions which have upheld such a definition in a policy. (See, *e.g.*, *Girard v. State Farm Mutual Automobile Insurance Co.* (Mo. App. 1987), 737 S.W.2d 254.) The plaintiffs point out that, in five of the nine States that have passed on the question, the uninsured motorist statute specifically provided that coverage for hit-and-run vehicles could be limited to cases where the accident was reported in writing within a specific number of days. The Illinois statute does not contain such a provision.

One case from another jurisdiction, not cited by the parties, while factually distinguishable, is instructive. In *Latham v. Mountain States Mutual Casualty Co.* (Tex. Civ. App. 1972), 482 S.W.2d 655, the Texas statute required that any stipulation in a contract requiring notice before filing a claim was invalid unless the stipulation was reasonable. Any stipulation fixing the time within which notice was to be given at less than 120 days was void. The court of appeals rejected the insurer's argument that its 30-day notice provision, identical to the one before us, was part of a definition, and was not a

condition precedent. The court held that the definition requirement was a condition precedent and was void. If it becomes apparent that an opinion on a question of law cannot affect the result as to the parties or controversy in the case before it, the court should not resolve the question merely for the sake of setting a precedent to govern potential future cases. (*Bluthardt v. Breslin* (1979), 74 Ill. 2d 246, 384 N.E.2d 1309; *Maybell v. Mayor's License Comm'n* (1981), 95 Ill. App. 3d 653, 420 N.E.2d 571.) An authority cited by Universal informs us that the use of the definition in issue is no longer used generally:

"The current INSURANCE SERVICES OFFICE PERSONAL AUTO POLICY forms do not require that the insurer be notified within 30 days of a hit-and-run accident. Elimination of this requirement is a sensible step. The potential benefits of such a requirement appear to be minimal at best. The thirty day requirement often became a focal point for needless and futile litigation, especially when an insurer sought to invoke the provision in instances when a prompt report of an accident had been made to the police. Furthermore, although hit-and-run accidents obviously involve somewhat special considerations, the requirement of an oath appears to be little more that [*sic*] an additional nuisance to honest claimants and a grossly inadequate deterrent for dishonest insureds." 2 A. Widiss, Uninsured and Underinsured Motorist Insurance § 16.9, Comment, at 55 (1993).

■ We have determined that, in view of our holding that a conflict exists between the definitional notice and the notice in conditions, any determination on our part of the validity of the definitional notice provision would be academic. It is therefore unnecessary for us to decide whether the definition of a hit-and-run automobile violated the public policy as enunciated by the legislature in the Insurance Code. Similarly, we need not decide the plaintiffs' alternative claim that since they did not meet the hit-and-run definition, the accident occurred between their vehicle and an uninsured motorist vehicle pursuant to that part of the statute which creates a rebuttable presumption that a vehicle whose owner or driver does not file a report with the Secretary of State within 120 days of an accident is an uninsured vehicle. See Ill. Rev. Stat. 1989, ch. 73, par. 755a(6).

The parties raise a number of other arguments which, in our judgment, are not properly before us because they were not properly raised in the trial court. However, because we believe the issues may be raised in the trial court after remandment and to discourage piecemeal appeals, we will answer the parties' other arguments:

■ (1) The plaintiffs maintain that Universal has waived the right, or is estopped, to claim that the plaintiffs did not serve notice as soon as practicable because of Universal's failure to raise that notice pro-

vision in its letter denying coverage. In support of its argument, the plaintiffs cite *Coulter v. American Employers' Insurance Co.* (1948), 333 Ill. App. 631, 78 N.E.2d 131. In that case the insured was involved in an accident on March 14, 1945; on May 18, 1945, the insured notified the insurer of the accident by letter and requested the insurer to conduct an investigation. The insurer did not respond to the letter. On May 18, 1945, the insured wrote again to the insurer. On July 5, 1945, the insured was served with summons, and on July 23, 1945, he sent a copy of the complaint to the insurer. The following day, the insurer notified the insured that the policy did not cover the accident. The principal claim on appeal by the insurer was that the accident was not covered by the policy. The appellate court disagreed. The appellate court also disagreed with the insurer's claim that it did not waive the reasonable notice provision of the policy.

In view of the facts in *Coulter*, its precise holding is not clear. But if *Coulter* is to be read as a pronouncement that in any case where an insurer refuses coverage on one ground, it waives the right, or is estopped, to deny coverage on another ground, we must respectfully disagree with the fourth district's statement in *Coulter*. Such a pronouncement is contrary to the express holding of the First Appellate District in *Tobi Engineering, Inc. v. Nationwide Mutual Insurance Co.* (1991), 214 Ill. App. 3d 692, 574 N.E.2d 160, and *National Tea Co. v. Commerce & Industry Insurance Co.* (1983), 119 Ill. App. 3d 195, 465 N.E.2d 206; the Third Appellate District in *Ladd Construction Co. v. Insurance Co. of North America* (1979), 73 Ill. App. 3d 43, 391 N.E.2d 568; and the Fifth Appellate District in *Tibbs v. Great Central Insurance Co.* (1978), 57 Ill. App. 3d 866, 373 N.E.2d 492. We believe that the better rule is that insureds must show that they relied to their detriment upon the insurer's failure to assert a particular defense. (See *National Tea*, 119 Ill. App. 3d at 205, citing *Tibbs*, 57 Ill. App. 3d 866, 373 N.E.2d 492.) An example of detrimental reliance occurs when an insured fails to provide documents or proof of loss after the insurer makes a denial of coverage. The courts have held that the insured should not be required to perform what would appear to be a useless act and that the insurer's blanket denial of coverage estopped the insurer from asserting the insured's failure to provide proof of loss or other documents. (See, *e.g.*, *Davis v. United Fire & Casualty Co.* (1980), 81 Ill. App. 3d 220, 400 N.E.2d 984.) We conclude, therefore, that on remand, in order to establish waiver or estoppel, the plaintiffs must show some detrimental reliance on the fact that Universal did not raise the reasonable notice provision in its letter denying coverage.

■ (2) The amended complaint does not establish an agency rela-

tionship between Universal and Yale, Rubens or American. Consequently, in the absence of such a relationship, any notice to Yale, Rubens or American may not be imputed to Universal. See *Black v. Illinois Fair Plan Association* (1980), 87 Ill. App. 3d 1106, 409 N.E.2d 549.

■ (3) The claim of the plaintiffs that they established notice as soon as practicable as a matter of law and the claim of Universal that the plaintiffs did not establish notice as soon as practicable as a matter of law are both rejected. It is well established that " ' "[a]s soon as practicable" in a policy covering liability for personal injury and property damage means within a reasonable time, and what is a reasonable time depends upon the facts and circumstances of the case.' [Citations.]" (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 282, 319 N.E.2d 25.) Generally, the question of what is a reasonable time is a question of fact to be decided by the jury, but if there is no controversy as to the facts, the question of reasonableness is for the judge to decide. (*Illinois Valley Minerals Corp. v. Royal-Globe Insurance Co.* (1979), 70 Ill. App. 3d 296, 388 N.E.2d 253.) At this point, we do not know what facts will be contested. In the case principally relied upon by Universal, *City of Chicago v. United States Fire Insurance Co.* (1970), 124 Ill. App. 2d 340, 260 N.E.2d 276, the appellate court affirmed a finding of fact by a judge *after a trial*. Moreover, in that case the insured gave notice to the insurer five years after the accident and 4 1/2 years after the filing of a lawsuit against the insured.

■ (4) The plaintiffs maintain that Universal's failure to show actual prejudice due to the delay is controlling. Universal answers that prejudice is irrelevant. We disagree with both arguments. Although an insured's lack of diligence is not overlooked merely because the insurer has failed to show actual prejudice due to the delay, lack of prejudice is a fact which may be considered by the court. *McFarlane v. Merit Insurance Co.* (1978), 58 Ill. App. 3d 616, 374 N.E.2d 951.

For these reasons, the order denying leave to file an amended count I is reversed and the cause remanded for further proceedings.

The plaintiffs next argue that they have alleged causes of action in count II of the amended complaint under section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1991, ch. 121 1/2, par. 262), which provides in part:

> "[U]nfair or deceptive acts or practices *** in the conduct of any trade or commerce are hereby declared unlawful."

Count II alleged that the unduly restrictive definition of "hit-and-run" and the inconsistent and misleading notice provisions consti-

tuted a subterfuge by Universal that violated the Insurance Code. Count II further alleged that by violating the Insurance Code Universal engaged in an unfair or deceptive act and practice in violation of the Consumer Fraud Act.

We must take the plaintiffs' case as it has been presented to us in their briefs. In the opening brief, the heart of the plaintiffs' argument is as follows:

"These violations of Illinois public policy and the Insurance Code are *unfair* acts and practices. There is no 'fair' way of selling insurance polices that violate the Insurance Code. These are *per se* violations of the Consumer Fraud Act." (Emphasis in original.)

The plaintiffs cite no case in support of that argument.

In their reply brief the plaintiffs made the following statements:

"Use of a policy form which violates the requirements of the Uninsured Motorist Statute automatically constitutes an 'unfair' act or practice under the Consumer Fraud Act.

\* \* \*

Universal Casualty claims that it is 'incomprehensible' that violation of the Insurance Code is a *per se* violation of the Consumer Fraud Act. Yet other states also follow the doctrine that a violation of a State Insurance Code by an insurance company is a *per se* violation of consumer fraud statutes which outlaw fair acts or practices. *Pearce v. American Defender Life Insurance Co.*, 343 S.E.2d 174 (N.C. 1986); *Vail v. Texas Farm Bureau Mutual Insurance Co.* 754 SW.2d 129 (Tex 1988)."

The plaintiffs cite no Illinois cases at all on this point, and the two cases from other jurisdictions the plaintiffs do cite do not support their argument that *any* violation of the Insurance Code is *per se* a violation of the Consumer Fraud Act. In those cases the court said that a particular violation of the Insurance Code was a violation of the Consumer Fraud Act.

█ Reduced to its essentials, the plaintiffs' argument is that they need prove only that a practice offended the public policy established by the Insurance Code and nothing more to establish an unfair practice under the Consumer Fraud Act. As noted, the plaintiffs cite no cases to support their argument. In our judgment we would be justified in refusing to consider this argument of the plaintiffs. As was said in *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, 523:

"Reviewing courts are entitled to have the issues clearly defined, to be cited pertinent authorities and are not a depository in which an appellant is to dump the entire matter of pleadings, court action, argument and research as it were, upon the court."

However, we will address the plaintiffs' arguments briefly. For the purposes of argument only on this point, we will accept the plaintiffs' contention that the definitional notice provision did, in fact, offend the public policy as expressed by the legislature in the Insurance Code.

In *Elder v. Coronet Insurance Co.* (1990), 201 Ill. App. 3d 733, 558 N.E.2d 1312, this court adhered to the view of the second district of this court as expressed in *People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 438 N.E.2d 924, in which the court adopted the criteria outlined in *Federal Trade Comm'n v. Sperry & Hutchinson Co.* (1972), 405 U.S. 233, 31 L. Ed. 2d 170, 92 S. Ct. 898, in considering alleged violations of the Consumer Fraud Act. We held that in order to establish an unfair practice under the Consumer Fraud Act the plaintiff was required to prove that the complained-of practice offended public policy as it had been established by statutes, the common law or otherwise *and* that the practice was immoral, unethical, oppressive, or unscrupulous; *and* that it caused substantial injury to consumers (or competitors or other businessmen). The plaintiffs have not argued or made any attempt to show that the definitional notice contained in Universal's policies was immoral, unethical, oppressive or unscrupulous and that it caused substantial injury to consumers. Therefore, we must reject the plaintiffs' argument that their complaint established an unfair practice under the Consumer Fraud Act.

We turn next to the plaintiffs' claim that the use of conflicting notice provisions in the policy constituted a deceptive practice under the Consumer Fraud Act. Again, the plaintiffs cite no cases to support such a far-reaching pronouncement. In substance, it is the plaintiffs' argument that every ambiguity in an insurance contract that is resolved against an insurer gives rise to a cause of action for deceptive practices under the Consumer Fraud Act. We agree with Universal that such a holding would have an overwhelmingly unfair effect on the insurance industry. Such a result could never have been within the contemplation of the legislature when it drafted the Consumer Fraud Act. Moreover, the insurance policy was there to be read by the plaintiffs as well as the insurer. We again agree with Universal that it is "incomprehensible" that it could be said that Universal misrepresented or concealed anything from the plaintiffs. For these reasons, we hold that the trial judge properly dismissed count II and that order is affirmed.

Judgment affirmed in part; reversed in part and remanded.

McNAMARA and GIANNIS, JJ., concur.