2016 IL App (1st) 130291

FIFTH DIVISION
June 24, 2016

No. 1-13-0291

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| FHP TECTONICS CORPORATION, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN HOME ASSURANCE COMPANY; NES | ) | |
| RENTALS HOLDINGS, INC., d/b/a NES Traffic Safety; | ) | |
| and VICKY JEAN COOPER, Individually and as Special | ) | No. 11 CH 55239 |
| Administrator of the Estate of John I. Rivera, Deceased, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |
| (American Home Assurance Company, Defendant- | ) | |
| Appellee). | ) | The Honorable |
| | ) | Rita Mary Novak, |
| | ) | Judge presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.[*]
Justices Gordon and Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     This case arises out of an insurance coverage dispute between plaintiff, FHP Tectonics

Corporation (FHP), and defendant, American Home Assurance Company (American). FHP filed

a complaint for declaratory judgment and other relief against American, seeking, *inter alia*, a

_____

[*]This case was recently reassigned to Justice Burke.

declaration that American owed FHP a duty to defend and indemnify in an underlying case. The trial court dismissed with prejudice the counts of FHP's complaint relating to its duty to defend. Thereafter, FHP filed an amended motion to reconsider, arguing for the first time that it should be allowed leave to replead. Following a hearing, the court denied FHP's motion.

¶ 2        FHP appeals, arguing (1) the trial court erred by dismissing the matter with prejudice without allowing it the opportunity to amend the complaint, and (2) American is estopped from denying coverage to FHP. For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4                                     A. The Policy at Issue

¶ 5        FHP entered into a contract with the Illinois State Toll Highway Authority for construction on the Tri-State Tollway. FHP, in turn, entered into a subcontract with NES Rentals Holdings, Inc. (d/b/a NES Traffic Safety, LP) (hereinafter NES). The subcontract required that NES maintain insurance coverage, including commercial general liability insurance of at least $5 million per occurrence for bodily injury, personal injury, and property damage liability. FHP was to be listed as an additional insured on a primary, noncontributory basis for any liability arising directly or indirectly from the work.

¶ 6        NES obtained commercial general liability coverage from American, with the effective date of October 1, 2006, through October 1, 2007. The policy lists NES as the named insured. Under "Coverage A," which relates to bodily injury and property damage liability, the policy provides that American will "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' " to which the insurance applies. Further, the policy specifies that American has the "right and duty to defend the insured against

any 'suit' seeking those damages." A "Self-Insured Retention" (SIR) endorsement modifies the policy, however, to delete the aforementioned paragraph and instead provide as follows:

> "We will pay on behalf of the Insured those sums in excess of the 'Retained Limit' that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right but not the duty to defend any 'suit' seeking those damages. We may at our discretion and expense, participate with you in the investigation of any 'occurrence' and the defense or settlement of any claim or 'suit' that may result."

The SIR endorsement specifies that "[y]ou are responsible for the payment of" fees and costs incurred, and if American incurs an obligation under the policies to pay damages resulting from a claim, "you will be responsible for a percentage of the defense costs." The policy defines "you" and "your" as the named insured shown in the declarations and any other person or organization qualifying as a named insured under the policy.

¶ 7        Another endorsement, entitled "An Additional Insured-Where Required Under Contract or Agreement," extends coverage to "[a]ny person or organization to whom you become obligated to include as an additional insured under this policy, as a result of any contract or agreement you enter into which requires you to furnish insurance to that person or organization of the type provided by this policy, but only with respect to liability arising out of your operations or premises owned by or rented to you."

¶ 8        The policy also contains an "Other Insurance" clause, which applies when other insurance is simultaneously available to the insured for a loss American covers under

"Coverages A or B" of its coverage section. Pursuant to the "Other Insurance" clause, American insurance is primary except in certain situations when it is excess. An "Additional Insured-Primary Insurance" (AI-PI) endorsement modifies the policy, however, to add that "coverage under this policy afforded to an additional insured will apply as primary insurance where required by contract, and any other insurance issued to such additional insured shall apply as excess and noncontributory insurance."

¶ 9                               B. The Underlying Action

¶ 10      The dispute in this case arose after Vicky Jean Cooper, individually and as special administrator of the estate of John I. Rivera, filed suit against FHP and several other defendants. In her fourth amended complaint, Cooper alleged that in December 2006, an employee of one of FHP's subcontractors was transporting a load of fill when he abruptly changed lanes and stopped or decelerated to enter the construction site. Rivera crashed into the truck, sustaining fatal injuries. Cooper's complaint set forth a wrongful death claim and a survival claim against FHP, alleging that FHP acted negligently in several ways.

¶ 11      FHP tendered a claim to American.[1] In January 2009, American denied coverage on the basis that (1) the additional insured endorsement provided coverage only if liability arose out of NES's performance of ongoing operations and the loss did not involve any activities of NES, and (2) its policy sat over a $500,000 retention limit and did not provide coverage for any entity until the $500,000 retention was met.

¶ 12                             C. The Present Coverage Action

¶ 13                         1. *FHP's Complaint for Declaratory Judgment*

---

[1]FHP tendered its claim to American after Cooper filed her first complaint.

¶ 14 In December 2010, FHP filed a complaint for declaratory judgment and other relief against NES, American, and Cooper. Counts II, III, and V of the complaint were directed at American. In count II, FHP sought a declaration that American owed a duty to defend and indemnify FHP as an additional insured because the accident arose out of NES's ongoing work, for which American's policy provided or potentially provided coverage. In count III, FHP argued that American was estopped from denying coverage because 28 months had elapsed since FHP tendered its defense and American had failed to either file a declaratory judgment action or defend FHP under a reservation of rights. Finally, in count V, FHP argued that it was entitled to defense counsel of its choice at American's expense due to a conflict of interest.

¶ 15                    2. *American's Motion to Dismiss FHP's Complaint*

¶ 16 In March 2011, American filed a motion to dismiss FHP's complaint pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2010)). American argued that it did not owe a duty to defend, as the policy provided that American had "the right but not the duty to defend any 'suit' " seeking "damages because of 'bodily injury' or 'property damage' to which" the insurance applied. Further, American argued, because it had no obligation to defend, an actual controversy did not exist as to (1) whether American was estopped from asserting coverage defenses or (2) whether FHP was entitled to defense counsel of its choice. American further argued that its duty to indemnify FHP was not ripe for consideration, as FHP had not incurred any liability.

¶ 17 In May 2011, FHP filed a response, arguing the trial court should deny American's motion because (1) an actual controversy existed between FHP and American as to American's duty to defend; (2) American was estopped from asserting its "right to defend" policy defense and was estopped under the "mend the hold doctrine" from asserting any policy defense other

5

than the defenses stated in its letter; and (3) American was required to provide FHP with counsel. Later that month, American filed a reply.

¶ 18    In August 2011, the parties appeared before the trial court. Following a hearing, the court dismissed with prejudice FHP's counts against American relating to American's duty to defend. The court found the policy did not give rise to a duty to defend. Further, the court stated, because the policy did not set out a duty to defend, estoppel did not apply. The court also held the "mend the hold" doctrine did not apply, as it required a showing of prejudice, which FHP had not shown. The court explained that the mend the hold doctrine "certainly does not apply simply because the insurance company did not list every conceivable defense in [the] denial of coverage letter." In its denial of coverage letter, American denied FHP's claim because (1) the loss did not involve any activities of NES, and (2) its policy sat over a $500,000 self-insured retention.

¶ 19    The trial court also dismissed the claims relating to American's duty to indemnify but did so without prejudice, finding those claims were not ripe.[2]

¶ 20                              3. *FHP's Motion to Reconsider and*
                    *Motion for Leave to Amend Its Motion to Reconsider*

¶ 21    FHP subsequently filed a motion to reconsider. In its motion, FHP did not argue that the policy was ambiguous, nor did it request leave to amend its complaint. After American filed an opposition to FHP's motion, FHP filed a reply, arguing for the first time that under the plain language of the AI-PI endorsement, the American/NES policy provided primary insurance coverage on a noncontributory basis for FHP. FHP further alleged the terms of the AI-PI endorsement directly conflicted with the terms of the SIR endorsement, thereby creating ambiguity as to coverage for FHP. On American's motion, the court struck the new allegations in

---

[2]FHP had also filed a claim against NES. The trial court's order gave FHP 28 days to file an amended complaint against NES.

FHP's reply brief, declining to consider any matters that were not connected to the arguments raised in FHP's motion for reconsideration.

¶ 22        In March 2012, FHP filed a motion for leave to amend its motion to reconsider to include an argument that the court should not have dismissed its complaint with prejudice. FHP argued it could allege facts establishing American owed a duty to defend in the underlying litigation. Specifically, FHP posited that the language of the SIR endorsement directly conflicted with the language of the AI-PI endorsement, thus making the policy ambiguous. FHP argued that because the terms of the SIR endorsement directly conflicted with the AI-PI endorsement and the AI-PI endorsement afforded greater coverage, the terms of the AI-PI endorsement controlled.

¶ 23        FHP attached to its motion another Cook County circuit court decision. FHP asserted that in that case, the court held American owed a duty to defend an additional insured under the American/NES policy because of the ambiguity created by the conflicting language of the SIR endorsement and the AI-PI endorsement. FHP argued that if granted leave to amend its motion to reconsider, it could plead facts establishing it was entitled to coverage and a defense under the American/NES policy. Therefore, FHP posited, the court improperly dismissed its complaint for declaratory judgment with prejudice.

¶ 24                        4. *FHP'S Amended Motion to Reconsider*

¶ 25        In March 2012, the trial court granted FHP's motion for leave to amend its motion to reconsider. Thereafter, FHP filed an amended motion to reconsider in which it included its claim that it could plead facts establishing American owed a duty to defend FHP based on the ambiguity between the SIR endorsement and AI-PI endorsement. FHP argued the court should amend its August 2011 order to allow FHP to replead.

¶ 26    American filed an opposition to FHP's amended motion to reconsider, positing FHP waived its arguments by failing to raise them earlier in opposition to American's motion to dismiss FHP's complaint. Further, American argued, FHP failed to provide any authority to support its claim that it was allowed to amend its motion to reconsider to add new arguments. In addition, American asserted that FHP was precluded from amending its complaint after the court granted American's motion to dismiss with prejudice and entered final judgment. American also posited that even if FHP could amend its complaint, FHP had presented no facts, nor did any facts exist, that would change the court's decision to dismiss because American did not owe a duty to defend any insured under the American policy. Finally, American alleged that FHP should be subject to sanctions under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994).

¶ 27    FHP filed a reply, arguing its amended motion to reconsider and the exhibits attached thereto set forth the facts establishing it was entitled to relief. FHP further posited it had set forth facts establishing the language of the SIR endorsement conflicted with the AI-PI endorsement, creating ambiguity and thereby requiring American to defend FHP.

¶ 28    In August 2012, a hearing commenced on FHP's amended motion to reconsider and American's motion for sanctions. Following the hearing, the trial court denied FHP's motion to reconsider, finding the amended pleading could not correct the defects in the original complaint because the contract was unambiguous and did not provide for a duty to defend. The court indicated it did not believe a basis existed to allow amendment "because as a matter of law FHP cannot establish that there was a duty to defend in this insuring agreement." Thereafter, American withdrew its motion for sanctions.

¶ 29    In September 2012, FHP filed a notice of appeal from the trial court's August 2011 and August 2012 orders. On American's motion, this court dismissed FHP's appeal for lack of

8

jurisdiction. Thereafter, FHP filed a motion in the trial court to amend its August 2012 order to include Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) language. The trial court subsequently entered an order including such language, and this appeal followed.

¶ 30                                   II. ANALYSIS

¶ 31        On appeal, FHP argues (1) the trial court erred by dismissing the matter with prejudice without allowing it to amend its complaint, and (2) American is estopped from denying coverage to FHP. We address FHP's arguments in turn.

¶ 32                         A. Whether the Trial Court Should Have
                        Allowed FHP the Opportunity to Amend Its Complaint

¶ 33        FHP first posits the trial court erred by refusing to allow it to amend its complaint. FHP maintains that it could plead facts establishing American had a duty to defend. Specifically, FHP posits it could plead the policy terms were ambiguous and American was a primary insurer to FHP.

¶ 34        The trial court rejected FHP's request to amend its complaint in the context of denying FHP's amended motion to reconsider. Where the trial court denies a motion to reconsider that is based on new matters, such as new arguments or legal theories that were not presented during the course of the proceedings leading to the issuance of the challenged order, we apply an abuse of discretion standard. *Compton v. Country Mutual Insurance Co.*, 382 Ill. App. 3d 323, 330 (2008). We likewise employ an abuse of discretion standard when reviewing a trial court's decision to allow or deny a motion to amend pleadings. *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351 (2002); see also *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 148 ("The decision to deny a motion for leave to amend a complaint is reviewed under the abuse of discretion standard.").

¶ 35　　In determining whether to allow a party to amend its pleading, a trial court should generally consider "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273 (1992).

¶ 36　　Notably, however, the factors outlined above apply only to amendments proposed *prior* to final judgment. *Compton*, 382 Ill. App. 3d at 332. After final judgment, a plaintiff has no statutory right to amend a complaint and the court does not err by denying a motion for leave to amend. *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 14. This is because section 2-616(a) of the Code provides that amendments may be allowed on just and reasonable terms " '[a]t any time before final judgment,' " but the Code does not contain a corresponding provision requiring such latitude where a party seeks to amend its pleading after the court has entered final judgment. *Id.* (quoting 735 ILCS 5/2-616(a) (West 2010)). Instead, after final judgment, "a complaint may only be amended in order to conform the pleadings to the proofs." *Id.* (citing 735 ILCS 5/2-616(c) (West 2010)). A complaint cannot be amended "to add new claims and theories or to correct other deficiencies." *Id.*

¶ 37　　Here, the trial court entered final judgment regarding FHP's claims relating to American's duty to defend when it dismissed those claims with prejudice in August 2011. See *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 19 (the court's dismissal of the plaintiffs' complaint with prejudice constituted a final judgment). FHP first sought to amend its complaint when it filed its amended motion to reconsider, after final judgment was entered. Further, FHP did not propose any facts which would establish a viable cause of action

and allow for such an amendment. Under these facts, the court did not err by denying FHP's amended motion to reconsider in which it sought to amend its complaint.[3] See *Tomm's Redemption, Inc.*, 2014 IL App (1st) 131005, ¶ 14; see also *Hachem*, 2015 IL App (1st) 143188, ¶ 19 (the court did not abuse its discretion by denying the plaintiffs' oral motion to amend their complaint where the plaintiffs made their motion after the court dismissed their complaint and the plaintiffs did not explain how they would cure the defective pleading or why they had not sought leave to amend earlier).

¶ 38                              B. Estoppel and the Mend the Hold Doctrine

¶ 39        FHP also argues that American is estopped from denying coverage under its "right to defend" theory because American did not defend the underlying lawsuit under a reservation of rights or file a declaratory judgment action. FHP contends our court's decision in *Employers Reinsurance Corp. v. E. Miller Insurance Agency, Inc.*, 332 Ill. App. 3d 326 (2002), supports a finding of estoppel. In addition, FHP posits, the principles of the mend the hold doctrine apply to American's actions.

¶ 40                                      1. *Estoppel*

¶ 41        The doctrine of estoppel prohibits an insurer from simply denying coverage when a complaint alleges facts potentially covered by the insurance policy. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). Instead, an insurer must seek a declaratory judgment that the policy does not provide coverage or defend the suit under a reservation of rights. *Id.* If an insurer fails to take either action and the court subsequently finds the insurer has wrongfully denied coverage, the insurer may not assert policy defenses to avoid

---

[3]We note that the trial court dismissed FHP's amended motion to reconsider on the basis that FHP could not plead facts establishing there was a duty to defend and not on the basis that FHP's motion to amend was untimely. However, as a court of review, we may affirm the trial court's judgment on any basis appearing in the record. *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 44.

coverage. *Id.* at 150-51. Estoppel does not apply, however, where an insurer had no duty to defend. *Bartkowiak v. Underwriters at Lloyd's, London*, 2015 IL App (1st) 133549, ¶ 48. "In other words, the estoppel doctrine cannot create coverage where none existed in the first place." *Id.*

¶ 42    Thus, we turn first to whether the policy provided coverage. In construing an insurance policy, our primary goal is to determine and enforce the parties' intent, as expressed in the policy. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993). We construe the policy as a whole, "taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Id.* Where terms of a policy are unambiguous, we will apply them as written, affording them their plain and ordinary meaning. *Id.* On the other hand, if a policy is ambiguous, we will liberally construe an insurer's liability in favor of coverage. *Bartkowiak*, 2015 IL App (1st) 133549, ¶ 29. A policy is ambiguous when it is open to more than one reasonable interpretation. *Id.* However, "we will not strain to find ambiguity where the policy contains none." *Id.*

¶ 43    FHP argues the policy terms were ambiguous and gave rise to a duty to defend. Specifically, FHP asserts the SIR endorsement itself was ambiguous. Further, FHP posits, the policy as a whole is ambiguous because the SIR endorsement conflicts with the AI-PI endorsement.

¶ 44    The SIR endorsement provides as follows:

"We will pay on behalf of the Insured those sums in excess of the 'Retained Limit' that the Insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to

which this insurance applies. We will have the right but not the duty to defend any 'suit' seeking those damages. We may at our discretion and expense, participate with you in the investigation of any 'occurrence' and the defense or settlement of any claim or 'suit' that may result."

Later, the SIR endorsement states that "[y]ou are responsible for the payment of" fees and costs, and if American incurs an obligation under the policies to pay damages, "you will be responsible for a percentage of the defense costs." The policy defines "you" and "your" as the named insured. Based on the SIR endorsement's use of the word "you" in the last sentence of the endorsement, FHP argues the entire SIR endorsement is applicable only to the named insured, NES.

¶ 45          We are not persuaded by FHP's argument. The beginning of the SIR endorsement plainly states that American will pay on behalf of "the Insured" any sums above the retained limit that "the Insured" is required to pay as "damages because of 'bodily injury' or 'property damage.' " The policy then goes on to state that American has "the right but not the duty to defend any 'suit' seeking those damages." This portion of the SIR endorsement does not use the words "you" or "your" or in any way limit itself to only the named insured. Although the SIR endorsement subsequently states that American may participate with "you," *i.e.*, the named insured, in the investigation of any occurrence and defense or settlement of any claim, we disagree that the later portion of the endorsement shows the entire endorsement pertained only to the named insured. See *Sherwood Construction Co. v. American Home Assurance Co.*, No. CIV-09-1395-HE, 2011 WL 6012605, at *4-5 (W.D. Okla. Dec. 1, 2011) (rejecting the insured's argument that the use of the word "you" in the last sentence of a paragraph, which contained the same language as the

13

SIR endorsement in this case, meant the entire paragraph applied only to the named insured because the "operative sentence does not contain the word 'you' and is not limited to the named insured")[4]

¶ 46      The holding in *American National Fire Insurance Co. v. National Union Fire Insurance Co. of Pittsburgh, Pa*, 343 Ill. App. 3d 93 (2003), does not convince us otherwise. There, one section of a notice requirement in an insurance policy provided that "[y]ou must see to it that we are notified as soon as practicable of an 'occurrence' or an offense which may result in a claim." (Internal quotation marks omitted.) *Id.* at 102. The next section of the notice requirement provided that "[i]f a claim is made or 'suit' is brought against any insured, you must" take certain actions. (Internal quotation marks omitted.) *Id.* The policy defined "you" and "your" as the named insured or any person qualifying as a named insured. *Id.* at 103. The *American National* court concluded the additional insured could not have violated the aforementioned sections of the notice requirement because those sections applied to the named insured. *Id.* The court also found the policy's self-insured retention endorsement applied only to the named insured, where the endorsement stated "[y]ou will continue to be responsible for the payment of the Retention Amount." (Internal quotation marks omitted.) *Id.* at 106. However, the court found the additional insured did violate another section of the policy, which applied to "[y]ou and any other involved insured." (Internal quotation marks omitted.) *Id.* at 102.

¶ 47      In *American National*, the portions of the policy which the court found did not apply to the additional insured explicitly applied only to "you," *i.e.*, the named insured. By contrast, the disputed portion of the SIR endorsement in this case–the portion stating American has a right but

---

[4]We recognize that unpublished federal decisions are not binding or precedential on our court. *King's Health Spa, Inc. v. Village of Downers Grove*, 2014 IL App (2d) 130825, ¶ 63. However, nothing prevents us from using the same reasoning and logic that was used in an unpublished federal decision. *Id.*

not a duty to defend–is not limited to "you." Instead, it states, simply, that American has no duty to defend. It is only the next portion of the SIR endorsement paragraph, relating to American's participation in the investigation of any occurrence or defense or settlement of any claim, that is limited to "you." Moreover, the fact that the policy did not include language similar to the "[y]ou and any other involved insured" language in *American National* is not dispositive. The SIR endorsement stated "[w]e will have the right but not the duty to defend any 'suit' " seeking certain damages. The endorsement was in no way limited to one type of insured, and we will not read such a limitation into the policy where it is not expressly stated.

¶ 48       FHP's argument that the AI-PI endorsement creates ambiguity is equally unavailing. The AI-PI endorsement provides that coverage under the policy for an additional insured "will apply as primary insurance where required by contract." FHP notes that the subcontract between FHP and NES required NES to name FHP as an additional insured on its commercial general liability policy. FHP posits that the use of the term "primary insurance" indicates a duty to defend and pay defense costs immediately. Thus, FHP maintains that if American had no duty to defend, then the policy was not primary as to FHP, rendering the use of the term "primary" ambiguous.

¶ 49       First, we note, the AI-PI endorsement modifies the "Other Insurance" section of the contract. The "Other Insurance" section appears under the "Conditions" portion of the policy, not the "Coverages" section. The "Other Insurance" clause sets out American's obligations in the event that "other valid and collectible insurance is available to the insured for *a loss we cover under Coverages A or B of this Coverage Part.*" (Emphasis added.) By its own terms, then, the "Other Insurance" clause does not affirmatively grant coverage to an insured. Instead, it provides a method of apportionment among other insurance providers when coverage is triggered under Coverages A or B. It thus follows that if American had no duty to provide coverage for FHP

under the policy, the "Other Insurance" clause and the AI-PI endorsement modifying the "Other Insurance" clause were not triggered. See *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill. 2d 570, 576 (2000) ("the purpose of an 'other insurance' clause is not to trigger coverage but to provide a method of apportioning coverage that would be triggered otherwise"); see also *Zurich Insurance Co. v. Raymark Industries, Inc.*, 145 Ill. App. 3d 175, 199-200 (1986) (noting that an "other insurance" clause, which applied where an insured had "other insurance against a loss covered by this policy," applied only when a preliminary determination was made that a "loss" was covered by the policy (internal quotation marks omitted)).

¶ 50        Furthermore, even if the AI-PI endorsement could somehow be construed as affirmatively granting coverage, FHP's cited authority does not support its argument that "primary insurance" necessarily means an insurer has a duty to defend. In *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 978 (1991), our court discussed the nature of primary insurance in the context of distinguishing primary insurance from excess insurance, stating as follows: "Primary insurance is coverage whereby liability attaches immediately upon the happening of the occurrence that gives rise to liability; excess insurance provides coverage whereby liability attaches only after a predetermined amount of primary coverage has been exhausted." *Id.* Likewise, in *Home Indemnity Co. v. General Accident Insurance Co. of America*, 213 Ill. App. 3d 319, 321 (1991), the appellate court discussed the differences between primary and excess insurance, explaining that "the protections under the excess policy do not begin until those of the primary policy end" and "[t]hus, a primary insurer has the primary duty to defend and pay defense costs." Neither *Royal Insurance Co.* nor *Home Indemnity Co.* stand for the proposition that a primary insurance policy necessarily means the insurer has a duty to defend. Instead, the statements in both *Royal Insurance Co.* and *Home Indemnity Co.* relate to the *timing*

of when a duty to defend arises in a primary policy versus an excess policy. Our supreme court has made clear that an insurer's duty to defend "arises from the undertaking to defend *as stated in the contract of insurance*." (Emphasis added.) *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 48 (1987); see also *Employers Reinsurance Corp.*, 332 Ill. App. 3d at 335 ("[c]ertainly, this court has recognized the ability of insurance companies to reserve a duty to indemnify their clients as opposed to a duty to defend them"). Here, the language of the insurance policy did not set out a duty to defend.[5]

¶ 51    FHP's reliance on *Employers Reinsurance Corp.* does not convince us that estoppel applies. There, the insurer filed a declaratory judgment action to determine its obligations to defend or indemnify its insureds. *Employers Reinsurance Corp.*, 332 Ill. App. 3d at 331. The insurer did not raise its claim that it had a right but not a duty to defend until it filed its response to a motion for judgment on the pleadings. *Id.* at 332-33. On appeal, our court stated that while it was "possible that [the insurer] never explicitly contracted to have a duty to defend its insureds and only reserved the right to defend them," the insurer never raised that issue in its declaratory judgment action pleadings. *Id.* at 336. The court agreed that the insurer was required to include its "right to defend" coverage defense in its complaint, and the insurer's failure to do so was "fatal to that claim." *Id.*

¶ 52    Notably, the insurer in *Employers Reinsurance Corp.* failed to include its "right to defend" argument in its complaint for declaratory judgment, raising it for the first time in its response to a motion for judgment on the pleadings. Here, however, American raised its "right to defend" argument in the declaratory judgment proceedings at the time it filed its motion to

---

[5]Based on our determination, we need not address American's related argument, that the policy did not provide coverage to FHP because FHP was a third-party beneficiary and had no greater rights than NES, to whom FHP admitted the SIR endorsement applied.

dismiss FHP's declaratory judgment complaint. Accordingly, *Employers Reinsurance Corp.* does not aid American.

¶ 53    FHP also argues that the doctrine of "unclean hands" precludes American from taking advantage of its own wrongdoing, *i.e.*, its failure to comply with Illinois law, and then distinguishing itself from all other insurance companies that followed Illinois law. However, the doctrine of "unclean hands" does not apply unless a party's misconduct rises "to the level of fraud or bad faith." *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 60 (2009). Here, FHP has not alleged or shown that American engaged in fraud or acted in bad faith.

¶ 54                          2. *Mend the Hold Doctrine*

¶ 55    We further reject FHP's assertion that American was prohibited from setting forth its "right but not a duty to defend" argument based on the mend the hold doctrine. Traditionally, the mend the hold doctrine has been explained in the following terms.

> " 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground and put his conduct upon another and different consideration. He is not permitted thus to amend his hold. He is estopped from doing it by a settled principle of law.' " *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1042 (2007) (quoting *County of Schuyler v. Missouri Bridge & Iron Co.*, 256 Ill. 348, 353 (1912)).

In the insurance context, courts have precluded insurers from denying a claim on one basis and then changing its basis for denial during litigation. *Liberty Mutual Insurance Co. v. American Home Assurance Co.*, 368 Ill. App. 3d 948, 958 (2006). However, our court has refused to apply

the mend the hold doctrine "in the absence of unfair surprise or arbitrariness." *Liberty Mutual Insurance Co.*, 368 Ill. App. 3d at 959; see also *Trossman*, 373 Ill. App. 3d at 1044-45 (the counterplaintiffs could not prevail under the doctrine of mend the hold where they failed to show detriment, unfair surprise, or prejudice).

¶ 56        Here, FHP argues it was prejudiced by American's actions because it was forced to file this declaratory judgment action and too much time had passed for it to tender its claim to another insurer. It further argues it was prejudiced because when it drafted its complaint for declaratory judgment, it framed its allegations around the reasons American set out in its January 2009 denial of coverage letter. FHP argues the trial court then dismissed its claims with prejudice because of American's new "right but not a duty to defend" argument without allowing FHP to add allegations relative to that argument.

¶ 57        FHP's claims of prejudice are meritless. First, as American notes, whether American set forth its duty to defend argument or another basis for denial in its denial letter, FHP was on notice that American was denying coverage and would not defend FHP. No matter the rationale American provided, FHP's recourse would have been to sue for a declaration of coverage, which is exactly what it did. Further, FHP was on notice of American's denial and could have then tendered its claim to another insurer. Moreover, the trial court's refusal to allow FHP to amend its complaint was not based on any actions taken by American. Instead, it was based on the court's determination that FHP could not set out facts showing American had a duty to defend. FHP does not explain how the court would have ruled any differently if American had set out its "right but not a duty to defend" claim in its denial of coverage letter. In sum, FHP has failed to show it suffered any prejudice from American's actions.

¶ 58    FHP's reliance on *Coulter v. American Employer's Insurance Co.*, 333 Ill. App. 631 (1948), is misplaced. In *Jones v. Universal Casualty Co.*, 257 Ill. App. 3d 842, 852 (1994), our court stated that "if *Coulter* is to be read as a pronouncement that in any case where an insurer refuses coverage on one ground, it waives the right, or is estopped, to deny converage on another ground, we must respectfully disagree with the Fourth District's statement in *Coulter*. *** We believe that the better rule is that insureds must show that they relied to their detriment upon the insurer's failure to assert a particular defense." *Id.* As we have previously noted, more recent cases explicitly recognize that the mend the hold doctrine requires a showing of unfair surprise or detriment. See *Liberty Mutual Insurance Co.*, 368 Ill. App. 3d at 959; *Trossman*, 373 Ill. App. 3d at 1044-45. FHP also relies on the Cook County case that it attached to its amended motion to reconsider in which the court found the insurer waived its claim that it had no duty to defend by failing to raise that claim until it filed its motion to dismiss. The court's decision in that case notwithstanding, on the facts in this case, we conclude the mend the hold doctrine does not apply.

¶ 59                                  III. CONCLUSION

¶ 60    For the reasons stated, we affirm the trial court's judgment.

¶ 61    Affirmed.